Cross et al., Appellants, v. Hoch et al.

### Division One, April 14, 1899.*

149  325
152  507
149  325
158  246
149  325
160  308
149  325
176  ¹ 18
149  325
177  ²354

1. **Wills**: INTENTION. The intention of the testator is the cardinal rule to be observed in construing wills.

2. ———: ———: WORDS USED. It is also a fundamental rule that it matters not what words are used by the testator to express his intention, or in what popular or peculiar or technical language he expresses himself, the courts will give effect to his intention as it may be gathered from the entire instrument.

3. ———: ———: ———: DRAWN BY LAYMAN. Where the testator is not shown to have been a lawyer the technical terms he employed must be construed in the sense in which an educated man of average intelligence would have employed them. Carping and captious criticism of mere words must be discarded.

4. ———: ———: ———: TRUST: REMAINDER. The will of a testator who was the father of several children, gave his entire property to his wife "during her natural life," and then added: "It is my will that, after the death of my wife, my property be divided in the following manner," and then follows, after other clauses, this one: "To my daughter Sarah Cross and her heirs I give the west half of the northwest quarter of section twenty-five, and also my negro girl Amanda, provided that the property here devised to Sarah Cross be subject to the trust, care and control of my son Turner Maddox for her use; and should the said Sarah Cross die without children, then said property shall be divided among my other daughters, and if any of ——— be dead to their children such portion as their mother would have been entitled to agreeably to this provision." *Held*, first, that the will carved out a life estate for the testator's wife in express terms, and a life estate for Sarah Cross by necessary implication from the terms of the grant; it created a trust estate, made Turner Maddox the trustee and gave Sarah the *use* of the property only; second, the word "use" is not to be taken in its technical sense, but in its common meaning, to wit, that Sarah might occupy the land, enjoy its rents, issues and profits, but not own it so as to be able to sell it; third, at Sarah's death the whole estate went to her children.

*Note.—Decided February 15, 1899. Rehearing denied March 30. Motion to transfer to Court in Banc overruled April 14.

5. ———: ———: WORDS OF LIMITATION: HEIRS.  The words "and her heirs" used after the name of Sarah Cross in said will, are not words of limitation, indicating an intention to pass a fee simple to her, but were employed as synonymous with the word "children" used further down in the devise.

6. ———: ———: WORDS CREATING LIFE ESTATE.  A life estate can be created without the use of the express term "life estate."  An absolute estate may be limited in express terms to a life estate, and it may also be limited to a life estate by the necessary implication of the terms of the grant.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED (*with directions*).

CHESTER H. KRUM, M. B. JONAS and J. P. VASTINE for appellants.

(1)  The intention of the testator is plain.  He devises to Sarah Cross a life estate, and to her heirs (children) the remainder in fee simple.  Kinney v. Mathews, 69 Mo. 520; Bean v. Kenmuir, 86 Mo. 666; Chiles v. Bartleson, 21 Mo. 344; Blake v. Stone, 27 Vt. 477; Coursey v. Davis, 46 Pa. St. 25; Baxter v. Bowyer, 19 Ohio St. 490; Smith v. Bell, 6 Pet. 68; Carr v. Estill, 16 B. Mon. (Ky.) 309.  (2)  The devise to Sarah Cross was "subject to the trust, care and control of my son, Turner Maddox for her use."  The legal title was therefore in Turner Maddox during her lifetime, which negatives the theory of a fee simple or determinable fee in her with power of disposition.  Morrison v. Thistle, 67 Mo. 596; Tesson v. Newman, 62 Mo. 198; Clark v. Maguire, 16 Mo. 302; Froggatt v. Wardell, 3 De Gex and S. 685.  (3)  The words "her heirs," as used by the testator, in connection with the devise to Sarah Cross, not being necessary under the statute in 1844 to convey an estate in fee simple (R. S. 1835, sec. 2, p. 119, in force when the will was executed; same section in R. S. 1889, sec. 8834), and being

used by the testator nevertheless, but only in connection with the devise to Sarah Cross, and not in connection with the other devises in the will to his sons and daughters, evidently were intended to mean "the children" of Sarah Cross; and will be held to mean "her children" when necessary to carry out the clear intention of the testator.   Maguire v. Moore, 108 Mo. 267; Waddell v. Waddell, 99 Mo. 338; Haverstick's Appeal, 103 Pa. St. 394; Bland v. Bland, 103 Ill. 12.   (4) "Children," as mentioned in the will, means children living at the death of the ancestor of appellants.   R. S. 1889, sec. 8837; Naylor v. Godman, 109 Mo. 543.   (5)   In a will a testator may use the word "children" as meaning heirs of the body.   2 Wash. Real Prop. (5 Ed.) 654; Tyler v. Moore, 42 Pa. St. 389.   (6)   If such construction should be held, then the devise to Sarah Cross and her heirs, is a fee tail, and under our statute of 1835, Sarah Cross would take the life estate and her children the remainder in fee simple absolute. R. S. 1835, sec. 5, page 119; Carr v. Estill, 16 B. Mon. (Ky.) 309.   (7)   The rule in Shelley's case in so far as it relates to wills was abolished in this State in 1825.   R. S. 1825, sec. 18, p. 794; Muldoon v. White, 67 Mo. 471.   (8)   The case under the stipulation is determinable solely by the intention of the testator, which is to be gathered within the "four corners" of the will.   Regard being had to this obvious rule of determination, the judgment should be reversed and judgment for appellants rendered in this court to the extent of the recovery indicated by the record.   R. S. 1889, sec. 8916; Schorr v. Carter, 120 Mo. 409; Carr v. Estill, 16 B. Mon. (Ky.) 309; Tiedeman Real Prop., sec. 415.

R. H. STEVENS, GEO. W. WOLFF and JOHN W. McELHINNEY for respondents.

(1)   The intention of the testator was to give to Mrs. Sarah Cross a fee simple estate.   The devise is in the appropriate terms therefor—to her "and her heirs."   There is no

express limitation "for her natural life" or to that effect; and there is no remainder created to take effect "at her death" or "after her death," from which such limitation can be implied. Words creating a fee can not be cut down except by words as affirmatively strong. Small v. Field, 102 Mo. 125; Balliett v. Veal, 140 Mo. 187; Chew v. Keller, 100 Mo. 369; Mercier v. Mo. Riv., etc., Co., 54 Mo. 506. The decisions favoring a life estate, in such cases, are based upon an express limitation for life, or an implied limitation by a further disposition to take effect at the death of the first taker. Schorr v. Carter, 120 Mo. 409; Chiles v. Bartleson, 21 Mo. 344; Harbison v. James, 90 Mo. 411; Munro v. Collins, 95 Mo. 33; Redman v. Barger, 118 Mo. 568; McMillan v. Farrow, 141 Mo. 63; Bean v. Kenmuir, 86 Mo. 666. (2) The proviso that "the property here devised to Sarah Cross shall be subject to the trust, care and control of my son Turner Maddox for her use," does not indicate any intention to limit the estate for life. It recognizes that "the property" is "here devised to Sarah Cross," as in fact it was, and by the words "for her use," makes her the beneficial owner, as well as the legal owner. No estate or ownership is given to or vested in Turner Maddox. He has no title. If anything, he has a mere duty or power. The essential elements of a trust are lacking. 2 Wash. on Real Prop. (5 Ed.) 488; Perry on Trusts (4 Ed.), secs. 7, 13 and 20; Corby v. Corby, 85 Mo. 388; In re Hawley, 104 N. Y. 261. This proviso fails to define or declare any trust, or to prescribe any duties. It may have been an attempt to create an equitable separate estate, for the sole use of Mrs. Cross. It is ineffectual, because it fails to show any intent to exclude the rights of the husband, which must be clearly expressed or necessarily implied. No legal title is given to Turner Maddox. If it were given, there is nothing to prevent the use from being executed under the statute of uses. Leete v. Bank, 141 Mo. 580; Richardson v. DeGiverville, 107 Mo. 422; Hart v.

Leete, 104 Mo. 315; Halferty v. Scearce, 135 Mo. 433; Hill on Trustees (Am. notes), 657; Perry on Trusts (4 Ed.), secs. 649, 650 and 651.    But if it were effectual to create a separate estate, it would not limit the estate of Mrs. Cross to 1 er lifetime.    The land was hers although subject to a trust. Patrick v. Blair, 119 Mo. 105; Small v. Field, 102 Mo. 104; Turner v. Shaw, 96 Mo. 22; Pitts v. Sheriff, 108 Mo. 110. And such trust, if it had been created, would have been executed by the statute of uses at the termination of coverture, upon the death of the husband in 1877, and become thence-forth a legal estate.    Roberts v. Moseley, 51 Mo. 282; Pitts v. Sheriff, 108 Mo. 110; Pugh v. Hayes, 113 Mo. 432.    (3) The words "her heirs," in the devise to Mrs. Cross, are words of limitation, indicating an intention to pass a fee simple. They are not necessary for that purpose, but are technically apt and proper, and as such are still in common use and recognized by the courts as appropriate terms for that purpose, and are considered words of limitation, unless the will clearly shows that they are used to designate a new class of beneficiaries.    Chew v. Keller, 100 Mo. 369; Emmerson v. Hughes, 110 Mo. 627; Mercier v. Mo. Riv., etc., Co., 54 Mo. 506; Redman v. Barger, 118 Mo. 568; Fanning v. Doan, 128 Mo. 330; Jarboe v. Hey, 122 Mo. 341; Clarkson v. Clarkson, 125 Mo. 385.    (4)   By the words "die without children," the time of such death referred to is during the period before the time when the estate devised should take effect in possession, that is before the death of Mrs. Maddox, widow of the testator, who was given a life estate in all the property. The will provides "that the bequests hereinbefore made are not to take effect until after the death of my wife." Prosser v. Hardesty, 101 Mo. 593; Naylor v. Goodman, 109 Mo. 551; Ferguson v. Thomasson, 9 S. W. 714; Thackston v. Watson, 84 Ky. 206; Binney v. Richardson, 5 Dana (Ky.), 424; Pool v. Benning, 9 B. Mon. (Ky.) 623; Presley v. Davis, 62 Am. Dec. 398.    (5)   The devise here to Mrs. Cross created a

vested fee simple estate, subject to be defeated in case of her death without children, and with an executory devise over to her sisters upon such contingency. The contingency having become impossible by her death leaving children, her estate became absolute and indefeasible. 2 Wash. on Real Prop. (5 Ed.) 740; Prosser v. Hardesty, 101 Mo. 597; Bullock v. Seymour, 33 Conn. 293.

MARSHALL, J.—Ejectment for land in St. Louis county.

The plaintiffs, Eugene Cross and Emma Ashbrook, are the only children of Sarah Cross, who was a daughter of Stephen Maddox. Their grandmother, Sarah Maddox, died about the year 1866, and their grandfather, Stephen Maddox, died in 1844. Their mother, Sarah Cross, died in 1895, and their father, Bryan Cross, died in 1877. These plaintiffs sue in ejectment for certain land in St. Louis county. The answer admits the possession of the premises by defendants, and then interposes a general denial.

The case was tried in the circuit court on the following stipulation, and the will of Stephen Maddox.

### Stipulation.

"It is agreed and stipulated by the parties hereto that the interpretation of the will of Stephen Maddox, deceased, probated and filed in the probate court, then of the county of St. Louis and now of the city of St. Louis, on the 2d day of August, 1844, is the basis of the rights of the parties hereto to the land in plaintiff's petition described; and if said will gave to Sarah Cross, a daughter of said Stephen Maddox, mentioned in said will, an estate in fee simple in said land, then judgment shall go for the defendants herein; and if the estate so given to Sarah Cross by said will was an estate for her life, then judgment shall go for the plaintiffs herein, provided and so far as the said plaintiffs shall prove

by proper evidence that they are the sole children of said Sarah Cross; and it is further agreed that the monthly rental value of the land in controversy is $20 per month, to be computed from January 11th, 1896. It is also agreed that this stipulation shall be filed in lieu of an abstract of title, required by rule of court."

## *Will.*

"St. Louis County, State of Missouri,
April 1st, 1844.

"I, Stephen Maddox, of the county of St. Louis and State of Missouri, being of sound and disposing mind and memory, do make and ordain this to be my last will and testament, hereby revoking all others heretofore by me made.

"First, and principally, I give and bequeath to my wife, Sarah Maddox, all my estate, real and personal, of whatsoever kind or character, to have and to hold, to use and possess, under her own proper direction and control during her natural life, excepting only such special bequests and provisions as I shall hereinafter make. It is my will that after the death of my wife my property be divided in the following manner, to wit: To my daughter, Ann Glanville, I give my negro boy, Jackson, and also that portion of my land known as the east half of the southwest quarter of section twenty-four. To my daughter, Jane Huckstep, I give the east half of the southeast quarter of section twenty-three, and also my negro girl, Frances. To my daughter, Virginia Waltonspiel, I give the east half of the southwest quarter of section twenty-five, and also my negro girl, Kitty. To my daughter, Susan Pfeifer, I give the east half of the northwest quarter of section twenty-five, reserving one-fourth of an acre of ground within its limits so as to include the family burying 'ground' from sale or any other use or purpose whatsoever, and I also give to Susan Pfeifer my negro girl, Lidia. To my daughter Sarah Cross and her heirs I give the west half

of the northwest quarter of section twenty-five, and also my
negro girl Amanda, provided that the property here devised
to Sarah Cross be subject to the trust, care and control of
my son Turner Maddox for her use, and should the said
Sarah Cross die without children, then said property shall be
divided among my other daughters, and if any of ————
be dead to their children such portion as their mother would
have been entitled to agreeably to this provision.    And
should any others of my daughters die without children, then
their portion is to be divided as provided for in the case of
my daughter Sarah Cross.   To the children of my deceased
son, John F. Maddox, I give that portion of my land known
as the west half of the southwest quarter of section twenty-
four and also my negro girl Martha Ellen, and I hereby con-
stitute my son Turner Maddox their guardian to possess the
property for their benefit.   All of my lands hereby devised
lying and being in township forty-five north of range five
east of the fifth principal meridian.   I give to my grandchil-
dren heirs of my deceased son William Maddox my negro girl
Mary. It is further my will that all my land not herein other-
wise devised, all my negroes and other property not herein
specially provided for, be divided among my sons Thomas
H. Maddox, Anderson Maddox, Turner Maddox and Jesse
Maddox, and the children of my deceased son, William
Maddox.   It is my will that the land and negroes be divided
in kind they all agreeing to such division; if they can not
agree to such division  then the land and negroes are to be
sold by my executors, with the other property, in such man-
ner and on such terms as they may consider most advanta-
geous to those concerned, and divided in the manner before
designated; that is to say, my son Thomas H. Maddox to have
one part, Turner Maddox one part, Anderson Mad-
dox one part, Jesse Maddox one part, and the
children of my deceased son William Maddox, one
part; and it is my will that should any of my sons die

without children, then the portion of my estate to which he would have been entitled agreeably to the provisions of this will is to go to my sons that may be living, and the children of those that may be dead.   It is further my will that if my son-in-law, Francis Pfeifer, remain on my farm and attend to the concerns thereof satisfactory to my wife, that he shall have at the death of my wife, in addition to what I have hereinbefore bequeathed to his wife, one wagon, one horse, one plough, two cows and calves, one ax all at his choice, one-fourth of the stock of hogs, one-fourth of the crop on hand or in the ground.   I wish it to be understood that the bequests hereinbefore made are not to take effect until after the death of my wife.   I also give to my son, Jesse Maddox, and to my grandson Edward Maddox, each one good bed, at any time after my decease should they not get them before.   It is further my will that the note of hand which I hold against my son, Anderson Maddox, be taken into account in the apportionment of my estate; the note was drawn for seven hundred dollars, but he is entitled to a credit of eighty dollars for expenses incurred by him in removing the remains of my deceased son Gustavus, from New Orleans to St. Louis.   I have also a charge against Turner Maddox, which is to be accounted in the same manner.   It is also my will that all the property remaining at the death of my wife, and not divided in kind, as before provided for, be sold by my executors, and the proceeds, whether in money or notes, be equitably divided among my sons, Thomas H. Maddox, Turner Maddox, Anderson Maddox, Jesse Maddox, and the children of my deceased son William Maddox, by the same rule before provided in regard to my sons.   It is further my will and desire that my son, Turner Maddox, and my friend, Jonas Geyer, be the executors of this my last will and testament, and I do hereby appoint them as such with full powers to execute the provisions thereof, to make deeds and to do and perform any other act necessary to carry out the object of my

will. And I do hereby make it obligatory upon my heirs to submit to my wishes, to have my estate settled without any intervention of law or judicial proceedings other than what may be necessary to record title or to recover debts due to my estate. I wish it to be distinctly understood that I give to my executors full powers to transact all business regarding my estate as herein directed just as if I were alive and personally present to direct them, without being subject to the direction of any judge, court, or any tribunal whatever, and only perform the duties provided for, and incur no expenses not herein directed; and in case of the death, disqualification or refusal to serve of either of my executors it is my wish that Thomas H. Maddox be substituted in the place, and should more than one vacancy occur, then it is my desire that Anderson Maddox supply the place and I give unto them or either of them the same powers conferred on those first named; and as it is necessary that my executors be paid for their services I hereby order that they be paid one dollar and fifty cents for each day they may be occupied in settling the estate. I also give to my daughter Susan Pfeifer one-half of all the fowls that may remain at the death of my wife, and my daughter Sarah Cross the other half. It is my will that the negro girl, Mary, which I have given to the children of my deceased son William Maddox, be valued at the death of my wife and the amount deducted from the portion of my estate devised to them.

"In witness whereof I have hereunto set my hand this first day of April, in the year of our —— one thousand eight hundred and forty-four.

"Stephen Maddox,    [Seal.]

"Witnesses:

"Wm. B. Harwood,

"Jonas Geyer."

The will was duly admitted to probate in 1844. This was all the testimony introduced by either party. The case

was tried before the court, a jury being waived. No instructions were asked or given. The circuit court rendered judgment for defendants, and plaintiffs duly prosecuted their appeal to this court.

The character of the estate bequeathed to Sarah Cross by the will of Stephen Maddox, determines this case. If she got an estate in fee simple, the judgment should be affirmed, but if she got an estate for life, the judgment must be reversed.

The testator bequeathed his whole estate to his wife "during her natural life," subject to certain special legacies. He then provided as follows: "It is my will that after the death of my wife my property be divided in the following manner"—that is, he gave to each of his daughters certain land and a negro, to the children of his deceased son, John F., certain land and a negro, to the children of his deceased son, William, a negro, and he directed that the remainder of his land and negroes should be divided between his four living sons and the children of his deceased son, William.

The devise to his daughter Sarah Cross, with which we are particularly concerned in this case, is as follows: "To my daughter Sarah Cross and her heirs I give the west half of the northwest quarter of section twenty-five, and also my negro girl Amanda, provided that the property here devised to Sarah Cross be subject to the trust, care and control of my son Turner Maddox for her use, and should the said Sarah Cross die without children, then said property shall be divided among my other daughters, and if any of ———— be dead to their children such portion as their mother would have been entitled to agreeably to this provision. And should any others of my daughters die without children, then their portion is to be divided as provided for in case of my daughter Sarah Cross."

There is now, and has always been since before this will was made, a provision in the statutes of Missouri, that: "All

courts and others concerned in the execution of last wills
shall have due regard to the directions of the will, and the
true intent and meaning of the testator, in all matters
brought before them." Sec. 8916, R. S. 1889. And ever
since the decision in Erwin v. Henry, 5 Mo. 469, our judges
in delivering the opinions of this court on questions involving
the construction of wills, have distinctly stated that the in-
tention of the testator is the cardinal rule to be observed
in such cases, or as it was tersely expressed by WAGNER, J.,
in Bredell v. Collier, 40 Mo. l. c. 321, "The first thing to be
ascertained is what was meant by the testator in framing his
will; and if his meaning and intention are not violative of any
rules of law, they must be carried out and executed." In
Carr v. Dings, 58 Mo. l. c. 406, VORIES, J., said: "But in
construing wills, the intention of the testator is the object
to be attained, and in order to ascertain this object, it fre-
quently becomes necessary to look at the whole will, by
which it will sometimes become necessary to qualify partic-
ular clauses so as to bring them in harmony with the general
intention, as the same may be indicated by other clauses."
In Allison v. Chaney, 63 Mo. l. c. 282, NORTON, J., said:
"In construing wills the object is to reach the intention of
the testator, which is to be gathered not from single words
nor single passages, but from a consideration of the whole
instrument, and the general design and scope of it." The
principle last quoted was reasserted by the same judge in
Suydam v. Thayer, 94 Mo. l. c. 55, and it was further said:
"In giving a practical construction to wills, technical rules,
when they stand in the way of the manifest intention of the
testator, may be disregarded." In Crecelius v. Horst, 78
Mo. 566, this court affirmed the decision of the St. Louis
Court of Appeals [Crecelius v. Horst, 9 Mo. App. 51], where
it was held that: In construing a will the testator's inten-
tion governs, and that construction should be given which
prevents a failure of a gift. In Chiles v. Bartleson, 21 Mo.

l. c. 346, LEONARD, J., said: "The intention of the testator is plain enough; the whole will must be read together, and effect given to every clause of it, and the words used are to be understood in the sense indicated by the whole instrument." In Munro v. Collins, 98 Mo. l. c. 37, BRACE, J., said: "In the construction of wills, endeavor never to lose sight of that leading canon: to ascertain, if possible, the true intent and meaning of the testator in any given case, as the same is gathered from the whole context of the will, viewed in the light of the circumstances under which it was made, and aim to give effect to that meaning unless some positive legal principle forbids." In Lewis v. Pitman, 101 Mo. 281, BLACK, J., held that the "common sense" view of the matter was to gather the intention of the testator "from the whole will," and to give effect to it.

In Small v. Field, 102 Mo. l. c. 122, SHERWOOD, J., said: "And in construing wills, the polar-star of construction or exposition of a will, the meaning, the intention of the testator, is never to be lost sight of; single words, single clauses, will not be considered singly; but the whole instrument, its general scope and design as gathered from its four corners, will be taken into consideration, in connection with the circumstances, when properly admissible, in order that the intention of the testator may, if possible, prevail." In Redman v. Barger, 118 Mo. l. c. 573, BRACE, J., said: "The first and last inquiry in the construction of a will is, what was the intention of the testator. To that intent technical rules must yield, and to it, other canons of legal hermeneutics must be subordinated." The same rule was announced by the same judge in Long v. Timms, 107 Mo. 512. In Schorr v. Carter, 120 Mo. l. c. 413, BURGESS, J., said: "In construing a will, all of its provisions should be taken together and effect given to every clause of it, and the words used so construed as to meet as near as possible the intention of the testator."

In Drake v. Crane, 127 Mo. 1. c. 103, BURGESS, J., said "Technical words when used in a will are to be interpreted in their established legal sense, and as the testator is presumed to employ them, unless a contrary meaning is plainly intended by the context of the will." In McMillan v. Farrow, 141 Mo. l. c. 62, BURGESS, J., said: "The cardinal rule in the interpretation of a will is that the intention of the testator, as gathered from the whole instrument, shall control, and in arriving at such intention the relation of the testator to the beneficiaries named in the will, and the circumstances surrounding him at the time of its execution may be taken into consideration."

In Walton v. Drumtra, decided February 7, 1899, not yet reported, BURGESS, J., said: "So with respect to wills, they must be so construed as to carry out the intention of the testator to be gathered from the whole instrument."

It is also a fundamental rule that it matters not what words are used by the testator to express his intention, or in what popular or peculiar or technical language he expresses himself, the courts will give effect to his intention as it may be gathered from the whole instrument. Doubtless cases may be found where, while recognizing these principles of law, judges have applied them so as to completely disfigure the purpose of the testator, but this is as true of other principles of law, and must always be true as long as courts are composed of fallible human beings. The law remains the same, however, notwithstanding the result of any particular case.

In this spirit and in the light of these precedents, we must approach the solution of the question involved. The testator is not shown to have been a lawyer, and hence the technical terms he employed must be construed in the sense in which an educated man of average intelligence would have employed them. Carping and captious criticism of mere words must be discarded. We must seek admittance into

the family circle and learn the relations and feelings of the testator towards each of the beneficiaries of his bounty. We must read the secrets of his heart as his last will discloses them. [Small v. Field, 102 Mo. l. c. 125.] Viewed in this way we find this condition of affairs. Stephen Maddox on the 1st of April, 1844, had a wife, five living daughters, all of whom were married, four living sons, and grandchildren by two sons who had died. He owned much land and many slaves. He must have known that his end was near (in fact, he died on the 29th of June, 1844), and he prepared his will. To his wife he gave his whole estate, except some small specific legacies. He must have known that she could not long survive him and that she would not need what he left very long, and that next to his wife he owed a duty to the children whom he had begotten, so he qualified the gift to his wife by limiting it to her "during her natural life." Having thus provided for her, he proceeded further to dispose of the property after she should cease to need it. He directed: "It is my will that, after the death of my wife my property be divided in the following manner:"—he gave four of his daughters certain land and a negro each, without attaching any qualifications or limitations, but when he reached the point of providing for his daughter Sarah Cross, some other thought, consideration or feeling entered his mind. We can not read between the lines and see what it was that operated on him, and he has not told, but he changed the form and character of his bequest and the set phrases he had used in giving property to his other daughters, and said: "To my daughter Sarah Cross and her heirs I give the west half of the northwest quarter of section twenty-five, and also my negro girl Amanda," and then for an undisclosed reason, he added: "provided that the property here devised to Sarah Cross be subject to the trust, care and control of my son Turner Maddox for her use," and then having provided for her wants and those of her heirs, and to

further have the estate so bequeathed as to remain in his family in the event she should die without issue, he added: "and should the said Sarah Cross die without children, then said property shall be divided among my other daughters, and if any of — be dead to their children such portion as their mother would have been entitled to agreeably to this provision." Then he evidently remembered that some of his other daughters might die without issue and the share left to them get out of the family, so he added: "And should any others of my daughters die without children, then their portion is to be divided as provided for in case of my daughter Sarah Cross." Having thus provided for his daughters he made provision for his sons, taking similar precautions to keep the share left to each in the family in the event any of them should die without issue.

It is plain that the testator did not intend to put his daughter Sarah Cross in the same position with respect to the legacy left to her, that he had placed his other daughters in, for instead of leaving the property directly to her, he carved out a trust estate, made his son Turner Maddox the trustee, gave Sarah the use of the property only, and provided that if she died without children, the share so left should be divided between his other daughters or if any of them were dead, their children were to take their mother's part, thereby clearly indicating that if there were children born to Sarah Cross, they should have this share so bequeathed in trust after their mother's use for it had ceased by her death. The words employed to create the trust were inartificial perhaps, but they were effective, for no particular form of expression is requisite to create a trust. [Schmucker Estate v. Reel, 61 Mo. 592.]

The employment of the term "for her use" is not to be taken in its technical sense, for we can not presume that the testator was versed in legal history sufficiently to be familiar with the nature and effect of the Statute of Uses. The word

"use" must be taken in its common meaning, in the sense in which it is used by lexicographers, that she might occupy the land, enjoy the rents, issues and profits of it, have the services of the negro, but not own it, so as to be able to sell it.

It is contended, however, that the words "her heirs," as employed in the will in connection with the words: "To my daughter Sarah Cross, and," must be construed as words of limitation, indicating an intention to pass a fee simple estate, and that while they were not necessary to convey an estate in fee simple under the statute in force in 1844, when the will was made (R. S. 1835, sec. 2, p. 223), and are not necessary now (R. S. 1889, sec. 8834), but that ever since the rule in Shelly's case was abolished in Missouri in 1825 (R. S. 1825, sec. 18, p. 794), every conveyance of real estate passes all the estate of the grantor therein, unless an intent to pass a less estate expressly appears or is necessarily implied in the terms of the grant, still they are proper technical words to employ and are recognized by the courts as words of limitation, unless the will clearly shows that they are used to designate a new class of beneficiaries.

It may safely be assumed that the testator in this case did not know anything about the rule in Shelly's Case or about its abolition in Missouri in 1825 or about the statutory provisions referred to. He evidently used the term "her heirs" as meaning her "children" (for they are construed as interchangeable terms in Missouri [Waddell v. Waddell, 99 Mo. l. c. 345], and he intended to provide for them after the necessity for taking care of his daughter, Sarah, had ceased, for he said: "And should the said Sarah Cross die without children, then said property shall be divided among my other daughters." If he intended Sarah to have a fee simple, and she died without leaving children, her sisters and brothers would have inherited it at her death and the property would have remained in the family, without any such

provision in the will. If however Sarah died, leaving children, and seized of a fee simple estate, the children would have inherited the property without any provision of this character in the will. The testator therefore had some other purpose in his mind, which would not be accomplished if he gave Sarah a fee simple estate, and let it descend, at her death to her children, if she left any surviving her or to her brothers and sisters if there were no such children. Read in connection with the words: "provided that the property here devised to Sarah Cross be subject to the trust, care and control of my son Turner Maddox for her use," it seems like a message from the grave that Stephen Maddox intended to so place this provision for his daughter that she could enjoy the benefits flowing from his bounty, during her life, but that she should not have power to sell it or squander it, and that after she was gone, her children should have the whole estate, and if there were no such children, it should be divided among his other daughters, and if any of them were dead, leaving children, such children should take the share which their mother would have taken if alive. In this way the testator was making provision for his wife, for his daughters, for his grandchildren born of his daughters, for his sons, and for his grandchildren born of his sons, for they were all clearly in his mind and specific reference was made to them all; and further in this way the testator was preserving one-half of his estate to his daughters and their children, and the other half to his sons and their children, and providing against any of the sons inheriting any part left to any daughter who died without issue, and keeping the whole of such shares in the female circles of his family.

The context shows that the testator used the terms "her heirs" and "children" as synonymous. It also shows that he did not use the term "her heirs" as words of limitation, indicating an intention to pass a fee simple, for he gave his other four daughters land and negroes, and his other sons

and grandchildren land and negroes, and he did not employ any such words in the bequests to them. In fact if we look to the only other place in the will where he leaves anything to Sarah Cross, we find he gave it to her without any qualifications or limitations, for his will further provided: "I also give to my daughter Susan Pfeifer, one-half of all the fowls that remain at the death of my wife, and my daughter Sarah Cross the other half."

In short in every other instance in the will when he intended to give any absolute, fee simple estate or property to any of his beneficiaries, he simply employed the term, "I give," without any words of inheritance or qualification or limitation. It must therefore be held that he knew the force, in its common acceptation, of the word "give," and that he also knew that if he did not intend an absolute gift, he must use some qualifying word. This he did in only this one instance, in reference to his daughter Sarah. Conviction grows with closer examination and analysis that he intended Sarah to have the benefits and the fruits of his bounty as long as she lived, and that after her death the bequest should go to her children absolutely, if she left any surviving her, and if not, that his other daughters or their children should have it in fee.

But it is argued that he knew how to create a life estate, for he had done so in providing for his wife, and that if he had intended that Sarah should have only a life estate, he would have employed the same express language in making the bequest to her. This would be true if the law required that a life estate could only be created by the use of the express term "life estate." But such is not the law. The same intention may be expressed in any appropriate, equivalent words, and section 8834, R. S. 1889, distinctly makes provision to the same effect, for it says: "Every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear,

or be necessarily implied in the terms of the grant." Thus the statute recognizes that an absolute estate may be limited in express terms to a life estate, and that it may also be limited to a life estate by the necessary implication of the terms of the grant. This is not only the statute law of the State, but the same rule has become thoroughly imbedded in the jurisprudence of the State, by judicial interpretation. The latest case holding this doctrine is Walton v. Drumtra, decided by Burgess, J., on February 7, 1899, and concurred in by Gantt, C. J., and Sherwood, J. This decision is founded upon a long line of well considered cases; by Burgess, J., in McMillan v. Farrow, 141 Mo. 55, concurred in by Gantt, C. J., and Sherwood, J.; by Burgess, J., in Schorr v. Carter, 120 Mo. 409, concurred in by Gantt, C. J., and Sherwood, J.; by Black, J., in Lewis v. Pitman, 101 Mo. 281, concurred in by Ray, C. J., Sherwood, Brace and Barclay, JJ.; by Brace, J., in Redman v. Barger, 118 Mo. 568, concurred in by Black, P. J., Barclay and Macfarlane, JJ.; by Brace, J., in Munro v. Collins, 95 Mo. 33, concurred in by Norton, C. J., Sherwood and Black, JJ.; by Ray, J., in Harbison v. James, 90 Mo. 411, concurred in by Henry, C. J., Norton, and Brace, JJ.; by Ray, J., in Bean v. Kenmuir, 86 Mo. 666, concurred in by Norton, C. J., Sherwood and Black, JJ.; by Ray, J., in Russell v. Eubanks, 84 Mo. 82, concurred in by Henry, C. J., Norton, Sherwood and Black, JJ.; by Adams, C. J., in Straat v. Uhrig, 56 Mo. 482, concurred in by Vories, Sherwood and Napton, JJ.; by Vories, J., in Carr v. Dings, 58 Mo. 400, concurred in by Hough, Wagner, Sherwood, Napton and Lewis, JJ.; by Leonard, J., in Chiles v. Bartleson, 21 Mo. 344, concurred in by Scott, C. J., and Ryland, J.

A more distinguished and learned array of legal and judicial talent, could not be found standing sponsor for any other doctrine or principle of law in Missouri. The law is therefore written and the book closed and sealed on this question in Missouri.

The. testator therefore must be held to have carved out a life estate for his wife in express terms, and a life estate for his daughter Sarah Cross, by necessary implication from the terms of the grant, and one is as effectual under the statute and the decisions referred to as the other.

These considerations necessarily lead to the conclusion that the judgment should have been for the plaintiffs. The judgment of that court, for the defendants, is reversed and the cause remanded with directions to enter judgment for plaintiff, after taking an account of the rents and profits. All concur.