UNION NATIONAL BANK, ETC., RESPONDENT, v. BERTHA A. BUNKER, ET AL., DEFENDANTS, LYDIA L. BUNKER, ET AL., APPELLANTS.— 114 S. W. (2d) 193.

Kansas City Court of Appeals.   March 7, 1938.

*Thomas H. Reynolds* and *R. Arch Smith* for respondents, Maude S. Hollar et al.

*Lathrop, Crane, Reynolds, Sawyer & Mersereau* of Counsel.

*Roy W. Crimm* for Bertha A. Bunker et al., respondents.

*Henry M. Beardsley* for appellants.

BLAND, J.—This is an action to construe the will of Walter A. Bunker, deceased, who died in Kansas City, on May 31st, 1928. The will provides in Paragraph II thereof, as follows:

"II. I give, devise and bequeath to Bertha A. Bunker, beloved widow of my son, Irving Leonard Bunker, deceased, of 1209 West 59th Street, Kansas City, Missouri, the income from the sum of Fifty Thousand ($50,000.00) Dollars, which amount shall be put in trust with my executrix during her term as such executrix and afterward with the New England National Bank and Trust Company as Trustee, to be invested in good securities, and the interest received from such securities shall be paid semi-annually to Bertha A. Bunker during her lifetime. At her death, the principal shall revert to the heirs and legatees named in Paragraph XVI of this will."

Paragraph X reads as follows:

"X. I give, devise and bequeath to my deceased wife's niece, Vinnie Bell Bosworth, 9th & Glenwood, Mt. Washington, Missouri, the sum of Ten Thousand ($10,000.00) Dollars, which amount shall be put in trust with my executrix (and with New England National Bank and Trust Company after her term) and invested in good securities, and the interest received from such securities shall be averaged and paid quarterly to Vinnie Bell Bosworth, with the under-

standing that she shall have the privilege of withdrawing from the principal of such trust at need, not to exceed One Thousand ($1,000.00) Dollars in any one year. At her death, any balance remaining after payment of her funeral expenses shall revert to the heirs and legatees named in Paragraph XVI of this will."

In other parts of the will a great many specific bequests, mostly of money, are made to various persons. The will concludes (so far as disposing of the estate of deceased is concerned) with Paragraph XVI, reading as follows:

"XVI. I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, wherever situate, to all of the following named legatees then living, and to the child or children of a deceased parent hereinafter named, to-wit: Bertha A. Bunker, Alonzo E. Bunker, Lydia L. Bunker, Earl D. Bond, LeRoy M. Bond, Harold H. Bond, Jennie A. Dampier, Frances Klumb, Jessie E. Stadon, Ruth M. Kott, William H. Culver, Maude Stevens Haller, Marian Hallar Helman and James Cardwell Hallar, in the same proportion as bequests herein made to them, and to Vinnie Bell Bosworth in the proportion of Three Thousand ($3,000.00) Dollars. The amounts so coming to Bertha A. Bunker and Vinnie Bell Bosworth shall be added to the trusts held by my executrix or her successor in accordance with Paragraphs II and X, and the interest paid to them in the same manner, and upon the death of either the principal of such bequests shall revert to the remaining legatees named in this paragraph."

It appears that Bertha A. Bunker, the widow of the testator mentioned in Paragraphs II and XVI of the will, is still alive. However, Vinnie Bell Bosworth, the person mentioned in Paragraph X and XVI of the will, died on May 22nd, 1934. Alonzo E. Bunker, whose name appears in Paragraph XVI, died testate on August 3rd, 1929. He left a will but no children. Jennie A. Dampier, whose name likewise appears in Paragraph XVI, died testate on August 2nd, 1929. The sole beneficiaries under the will of Jennie A. Dampier are her two daughters, Frances G. O'Neall, mentioned in Paragraph XVI of the Bunker will as Frances Klumb, and Jessie M. Stadon. At the time of the institution of this suit Jessie M. Stadon was the duly qualified and acting executrix of the estate of her mother. The estate of Alonzo E. Bunker had been closed at that time and the executrix discharged. The respective widow and daughters of the said two deceased persons, mentioned in Paragraph XVI of the Bunker will, are each separately mentioned in said Paragraph of said will in their own right and as such are given a share in the division of that part of the fund given to Vinnie Bell Bosworth (hereinafter referred to as the Bosworth Trust) remaining at her death.

The controversy between the appellants and the respondent is over

the proper construction of Paragraphs X and XVI of the Will of William A. Bunker.

Appellants contend that, since all of those named in Paragraph XVI survived the testator, the whole of testator's residuary estate was immediately, upon the death of the testator, vested in these persons in the proportions mentioned in, and subject to, the provisions of this Paragraph; that insofar as the Bosworth Trust was concerned, Vinnie Bell Bosworth, became entitled, (Paragraph X) upon the death of the testator, to have $10,000.00 placed in trust for her during her lifetime, giving her the income therefrom, and the right to take, if she so desired, not to exceed $1,000.00 per year of the principal; that by the provisions of Paragraph XVI, certain portions of the general remainder of testator's estate, as they were collected, were to be added to the trust fund established in Paragraph X, in accordance with that Paragraph, the income from which, during her life, she was entitled to take; that it was the will of the testator that the funds which so came would be part of the trust described in Paragraph X and controlled in exactly the same manner; that in Paragraph XVI, the testator disposed of the remainder of his estate, that is, all which remained after the specific bequests which had been made theretofore in the will; that all of his property included not only the life interest in a portion of this remainder which he provided should belong to Vinnie Bell Bosworth, but as well all the *corpus* of her total trust; that, at the death of the testator, the total property which he left and which had not been covered and disposed of in the preceding special bequests, immediately vested, so that each one of the parties named in the residuary clause, (Paragraph XVI) immediately the testator died, had full right vested in him or her, to his or her portion, and could sell and convey that right and the property covered by it as he or she should choose; that in the Bosworth Trust, all that was given Miss Bosworth was her right for life to the income of the property in the trust and a certain sum each year according to her needs; that upon the death of Alonzo E. Bunker, his right, title and interest in the residue of the Bosworth Trust vested, by reason of his will to that effect, to his wife; that upon the death of Jennie A. Dampier, her right to and interest in the Bosworth Trust passed, under her will, to her two daughters, with the same rights thereto as above specified vested in the widow of Alonzo E. Bunker in his proportional interest in said trust fund.

Respondent denies this contention and takes the position that what remained of the Bosworth Trust passed on, and as of, the date of the death of Vinnie Bell Bosworth, to those who were named in Paragraph XVI, other than Vinnie Bell Bosworth, *who were still living,* and to these only.

There is no doubt that if the residuary clause (XVI) created a

vested remainder in those persons named therein, other than Vinnie Bell Bosworth (for convenience we will refer to the Bosworth trust alone, although there are two trusts created by the will, the Bosworth and the Bertha A. Bunker Trusts), then appellants' contentions are well founded. However, if there was created by the will a contingent remainder, then respondent's position should be upheld.

"A vested remainder is where a present interest passes to a certain and definite person but to be employed in the future. Vested remainders are also sometimes called executed remainders. In the case of a vested remainder the interest of the remainderman rises to the dignity of an estate in the land, and the possession of the tenant of the particular estate is construed to be the possession of him in remainder, so that the remainderman is held to be seized of his remainder. The distinguishing characteristic of a vested remainder is a present capacity to take effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, and this has generally been accepted by the courts and text writers." [21 C. J., pp. 979, 980.] This description probably does not fully cover the distinction between the two classes of remainders but it is sufficient for the purposes of this case.

The vital parts of the will, so far as its proper construction is concerned, are that part of Paragraph X reading: "At her (Vinnie Bell Borworth's) death any balance remaining after payment of her funeral expenses shall revert to the heirs and legatees named in Paragraph XVI of this will," and in Paragraph XVI: "The amounts so coming to Bertha A. Bunker and Vinnie Bell Bosworth shall be added to the trusts held by my executrix or her successor in accordance with Paragraphs II and X, and the interest paid to them in the same manner, and upon the death of either the principal of such bequest shall revert to the remaining legatees named in this paragraph."

The whole or at least the principal question is whether that part of Paragraph XVI just quoted, in the use of the word "remaining" refers to the rest of those named in that paragraph (the will speaking as of the date of the death of the testator) other than Vinnie Bell Bosworth, or refers to those left at her death. It seems to be conceded that if the meaning of the word is to be construed as equivalent to "other" appellants' contention is well taken, but if construed to mean "surviving," then respondent's position must be upheld.

Of course, in order to arrive at the intention of the testator the will must be construed as a whole. There can be no question that Paragraph X, standing alone, created a vested remainder in the fund mentioned in said paragraph, remaining at the death of Vinnie Bell

Bosworth, in the residuary legatees, other than Vinnie Bell Bosworth, mentioned in Paragraph XVI of the will, and that is so, regardless of the meaning to be given the word "revert" as used in that paragraph (and there is a controversy between the parties as to the meaning of that word). Likewise there can be no doubt but that, if we leave out the last sentence of Paragraph XVI this paragraph creates a vested interest in the residuary legatees as to the residuary estate. [Jones v. Waters, 17 Mo. 587; Chew v. Keller, 100 Mo. 362; Byrne v. France, 131 Mo. 639; Gardner v. Vanlandingham, 334 Mo. 1054; Dunbar v. Simms, 283 Mo. 356; Baker v. Kennedy, 328 S. W. 790.]

In construing Paragraphs X and XVI together it seems apparent to us that it was the intention of the testator that the trust fund, arising under the provisions of Paragraph XVI, should be administered as a part of the fund which was created under the provision of Paragraph X, that is to say, that the two were to be "added" together and be administered as one fund. There is no instruction in the will to keep them apart but quite the contrary. In Paragraph XVI we find this language: "The amounts so coming to Bertha A. Bunker and Vinnie Bell Bosworth shall *be added* to the trusts held by my executrix or her successor in accordance with paragraphs II and X, and the interest paid to them in the same manner." The record shows that they have been mingled in the hands of the trustee and treated by it and Miss Bosworth as the same fund. Having created a vested remainder in the residuary legatees, other than Miss Bosworth, in the fund created under Paragraph X of the will, did the testator intend to change that arrangement by the use of the language in Paragraph XVI reading as follows: "The amounts so coming to Bertha A. Bunker and Vinnie Bell Bosworth shall be added to the trusts held by my executrix or her successor in accordance with paragraphs II and X, and the interest paid to them in the same manner, and upon the death of either the principal of such bequest shall revert to the remaining legatees named in this paragraph." As before stated, it seems apparent that it was not the intention of the testator to divide the Bosworth Trust Fund so as to have a part of it constitute the money provided for in Paragraph X and the other part provided in Paragraph XVI. Under the circumstances, it would be very unusual for the testator to provide for the disposition of the remainder of the trust money in one paragraph different from that in the other.

Reverting to the language used in Paragraph XVI the word "remainder" has been construed differently but there is no necessary inconsistency in the cases so construing it, as the word must be construed in accordance with the circumstances and conditions under which it is used. We might say here that the words "upon the death" used in Paragraph XVI throws very little light upon the

controversy because it is generally held that adverbs of time, or adverbial clauses designating time, do not create a contingency in a devise, but merely denote the time when the enjoyment of the estate shall commence. [Carolina Power Co. v. Martha H. Haywood, 186 N. C. 313, 319; In re O'Dell's Will, 206 N. Y. S. 261; Chew v. Keller, *supra*, 1. c. 366; Dunbar v. Simms, *supra*.] In the case of Smith v. Myers, 212 Pa. 51, in a will, in many respects, similar to the one in the case at bar, the use of the word "remainder" was construed to mean "other" and not "surviving." In the cases of Henderson v. Henderson, 101 Atl. 691, and Turner v. Withers, 23 Md. 18, the word "remaining" was construed in the sense of "surviving." However, in the two cases last mentioned the word was used in an entirely different connection than in the case at bar and it was necessary, in order to give the wills therein involved a sensible construction, to so construe the word. There are other cases cited by respondent on this point which are of little value here as they are not will cases.

If the testator had said that the principal of the bequest to Vinnie Bell Bosworth should go to the legatees mentioned in Paragraph XVI, other than Vinnie Bell Bosworth, remaining at her death, the paragraph would no doubt be construed as respondent contends but the paragraph is not so worded. It uses the language "such bequests shall revert to the remaining legatees *named* in this paragraph."

This case is one particularly calling for the application of the well known rule that "the law favors vested estates, and no remainder will be construed to be contingent which may, consistently with the intention, be deemed vested." [Jones v. Waters, *supra*.] [See, also, Chew v. Keller, *supra*; Burne v. Frances, *supra*; Gardner v. Vanlandingham, *supra*; Deacon v. Trust Co., 271 Mo. 669.] In Gardner v. Vanlandingham, *supra*, 1. c. 1061, 1062, it is stated:

"Almost every will presents some difference in language and circumstances, so that, to some extent, each must be considered apart from any other case in order to ascertain its meaning in the light of the facts as they were known and considered by the testator. However, unless the intention is so clear that there is no room for construction, certain auxiliary rules of construction are looked to because they have been found by experience to more often reach correct results and because they are based upon policies which have been formulated in the interest of the public welfare.

"One such rule is that words are usually to be understood in their ordinary sense and primary meaning. Therefore, words, with a well-known technical meaning, should be construed according to their technical meaning unless a contrary meaning clearly appears from the context of the will. [Drake v. Crane, 127 Mo. 85, 29 S. W. 990; Cross v. Hoch, 149 Mo. 325, 50 S. W. 786 (where context of will and

fact that it was drawn by a layman was held to require a different interpretation); Loud v. St. Louis Union Trust Co., 298 Mo. 148, 249 S. W. 629; 28 R. C. L. 223, secs. 184-85.] Another rule is that the law favors vested estates, so that, unless the testator has by very clear words manifested his intention to the contrary, the persons who take under his will, as the members of a designated class, must be determined at the death of the testator and the estates given them vested them. [Evans v. Rankin, 329 Mo. 411, 44 S. W. (2d) 644; Palmer v. French, 326 Mo. 710, 32 S. W. (2d) 591; Ewart v. Dalby, 319 Mo. 108, 5 S. W. (2d) 428; Owens v. Men & Millions Movement, 296 Mo. 110, 246 S. W. 172; Baker v. Kennedy (Mo.) 238 S. W. 790; Dunbar v. Simms, 283 Mo. 356, 22 S. W. 838; Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S. W. 261; Carter v. Long, 181 Mo. 701, 81 S. W. 162; Tindall v. Tindall, 167 Mo. 218, 66 S. W. 1092; Chew v. Keller, 100 Mo. 362, 13 S. W. 395.] One good reason for the latter rule is that 'testators usually have in mind the actual enjoyment rather than the technical ownership of their property.' [McArthur v. Scott, 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015.] As a result of these rules it is generally held that in the absence of a clear contrary indication, those who compose a class described in a will as the testator's heirs, to whom a remainder of executory interest is given, are to be ascertained at the death of the testator. [23 R. C. L. 549, sec. 92; 49 A. L. R. 178, note, and cases cited]; and that a remainder given to them thereby is vested in them at that time;" and again at 1076:

" 'Words directing land to be conveyed to or divided among remaindermen after the termination of a particular estate are always presumed, unless clearly controlled by other provisions of the will, to relate to the beginning of enjoyment by the remaindermen, and not to the vesting of the title in them. For instance, under a devise of an estate, legal or equitable, to the testator's children for life, and to be divided upon or after their death among his grandchildren in fee, the grandchildren living at the death of the testator take a vested remainder at once, subject to open and let in afterborn grandchildren; although the number of grandchildren who will take, and consequently the proportional share of each, cannot of course be ascertained until the determination of the particular estate by the death of their parents.' "

Under these rules of construction we are of the opinion that Paragraph X and XVI of the will created a vested remainder in the residuary legatees, other than Vinnie Bell Bosworth, in the combined *corpus* or principal of the trust money given in the two paragraphs to Vinnie Bell Bosworth during her life (less any amount of the principal needed by her.)

We have examined the decisions cited by the respondent and find

them not in point. In DeLassus v. Gatewood, 71 Mo. 371, the words of the will were "and at the death or marriage of my said wife, it is my will that all my estate heretofore bequeathed shall be equally divided between my children that are *alive,* or their bodily children." (Italics ours.) In Dickerson v. Dickerson, 211 Mo. 483, the will read "and at her death said farm to be divided among my *surviving* children." (Italics ours.) In Sullivan v. Garesche, 229 Mo. 496, the words were "In the event of the death of both . . . before marriage, said property shall be divided equally among my *surviving* children." (Italics ours.) In Baker v. Kenney, 238 S. W., *supra,* it was held that where the land was devised to testator's son for use for life and at his death to be divided between testator's heirs, such heirs took an estate in the remainder, which vested immediately upon testator's death. At l. c. 791, the court said: "If the clause under consideration had read that at the death of George H. Baker the land shall be equally divided among my heirs *then living,* or it shall go to my heirs who shall *survive* my son George H. Baker, or if words of equivalent import had been used, then it would clearly have created a contingent remainder, and no title would have passed by the deed to Jonathan S. Baker." (Italics ours.) The will in the case at bar contained no such language as that suggested in the quotation from the Baker case. On the other hand, the will here is more like the will in that case.

We have, up to this point, not discussed the proper construction of the word "revert" used in these paragraphs. The usual and legal definition of that word is "to come back; to go or pass; to go to or pass to; to return; to return, come or fall back; to return, to come or go back; to turn back; to turn or throw back." [34 C. J., p. 745.] However, it is sometimes used in the sense of "go to; to pass to." [Union Trust Co. v. Curby, 255 Mo. Mo. 393, 408; Brown v. Guthery, 190 N. C. 822; Mastellar v. Atkinson, 94 Kas. 279; In re Briggs Estate, 186 Calif. 351.]

Appellants contend that: "Further, the provision at the end of paragraph X is that the residue of the trust in that paragraph provided shall *revert* to the heirs and legatees named in Paragraph XVI; and the language at the end of paragraph XVI is that such residue 'shall *revert* to the remaining legatees named in this paragraph.' This means that the principal of this trust fund reverts to all those legatees *named* in Paragraph XVI other than Vinnie Bell Bosworth, who is dead. She is dead; the rest remain. Two others have died, it is true. But their interest was vested. They are of the others named."

Respondent contends that this is an impossible construction of the word "revert" for the reason that: "The true meaning of the word, i. e. 'to go back' or 'return' cannot here be employed, since

'the balance remaining' did not come from the said 'heirs and legatees' (Paragraph X), nor did the 'principal of such bequest' come from the 'remaining legatees' (Paragraph XVI''); that the word should be construed to mean ''to go to'' or ''to pass to,'' citing Johnson v. Askey, 190 Ill. 58; In the Matter of the Estate of Abraham Booth Bennett, deceased, 134 Calif. 320, and other cases to which we have referred in connection with this subject.

We are persuaded that the testator did not use the word in a strictly technical sense. Reading these paragraphs of the will it would seem that the testator, when using this word, apparently thought of his property moving from him to the holder of the life estate and, upon her death, to pass back, as it were, to his estate, so that it might serve as a conduit to carry the remainder of the residuary legatees. [See Petition of Smith, 139 Atl. 832.]

The judgment is reversed and the cause remanded with instructions to the lower court to render judgment in accordance with this opinion. All concur.