CARTER et al., Plaintiffs in Error, v. LONG et al.

Division One, May 25, 1904.

1. **WILLS: Persons Included in Devise to Child: Gift Over.** A devise to a trustee for the benefit of the children of a certain named child, the trust being not an executory but a dry or nominal one, does not comprehend the unborn children of such child. So that if a devise is made to a trustee for the children of a son Charles, and Charles at that time had only one child, Margaret, and the land so devised is sold for the debts of the testator at much less than its real value, the children of said Charles unborn at the time of the testator's death, can not maintain a suit to have the purchaser at said sale declared to hold the lands in trust for them, on the ground that the sale was made as a result of a conspiracy between him and the other adult devisees which had for its design the fraudulent deprivation of the plaintiffs of their interest in the land. In such case the title vested in the trustee for Margaret alone.

2. ———: **Devise to Class: When Ascertained.** Where a devise is to a class the members of the class are to be ascertained at the time the will takes effect. And if no other time is mentioned in the will when it is to take effect, it takes effect on the death of the testator. And hence only such members of the class as are then *in esse* share in the devise to the class. And if the devise was to a trustee for the benefit of the children of a certain child, the trust created being not an active or executory one but a dry or nominal one, the devise took effect immediately on the death of the testator, and vested the estate in such children of the child as were then *in esse* and cut out after-born children of such child.

3. ———: ———: **Meaning of Children.** The fact that Charles had only one child, or no child at all, when the testator executed his will giving certain property to a trustee for the benefit of "the children" of Charles, does not authorize the court to hold that he meant to include children of Charles unborn at the time of testator's death.

Error to Pike Circuit Court.—*Hon. D. H. Eby,* Judge.

AFFIRMED.

*Courtland Reynolds, I. C. Dempsey* and *J. D. Hostetter* for plaintiffs in error.

(1) The action of the trial court in sustaining the demurrer is sought to be justified on the theory that none of the present plaintiffs were in existence at the date of the death of the testator John C. Carter, Sr., and that therefore the eldest, Margaret E. Carter, who was the only child of Charles E. Carter *in esse* at that time, was the only one on whom the will would take effect. The intention of the testator should control, and all technical rules and niceties should be subordinated to that intention. Carr v. Dings, 58 Mo. 400; Allison, Exr., etc., v. Chaney, 63 Mo. 282; Russell v. Eubank, 84 Mo. 86; Suydam v. Thayer, 94 Mo. 55; Small v. Field, 102 Mo. 123; Cornwell v. Wulff, 148 Mo. 571; Briant v. Garrison, 150 Mo. 667; Redman v. Barger, 118 Mo. 568; Walton v. Drumtra, 152 Mo. 507; Rothwell v. Jamison, 147 Mo. 613. The petition shows that the will devised the interest in the realty to a trustee "for the children of said son Charles E. Carter." It is very apparent that the testator intended the devise for all of Charles E. Carter's children, as the use of the plural word "children" would indicate. There was only one child *in esse* at the time. Sec. 4650, R. S. 1899. (2) Our contention is, that the interest in the land being devised to a trustee "for the children of Charles E. Carter," they constitute a class, and all children born after the death of the testator are let into the enjoyment

of same just as those previously born. In Thomas v. Thomas, 149 Mo. 433, a case very much relied on by defendant, the court intimates that if the legacy were confided to trustees the technical rule therein approved would not apply, and after-born children would take under the will as well as those *in esse,* when it took effect. Here, upon the death of the testator, the interest devised vested at once in the trustee for the use of such children of Charles E. Carter as were then *in esse,* and the estate opened and let in the after-born children. Doerner v. Doerner, 161 Mo. 399; Waddell v. Waddell, 99 Mo. 338; Rothwell v. Jamison, 147 Mo. 601.

*Norton, Avery & Young* and *W..H. & Davis Biggs* for defendants in error.

(1) The trusteeship of John J. Knight was passive, the will imposing no duties on him; hence, upon the death of John C. Carter, Sr., and the proof of his will, the legal title to the one-sixth part of the land in controversy vested in Margaret E. Carter, the only child of Charles E. Carter. This was by operation of the statute of uses. Pugh v. Hayes, 113 Mo. 432; Scheffman v. Schmidt, 154 Mo. 204; Walton v. Drumtra, 152 Mo. 499; Webb v. Hayden, 166 Mo. 39; Newton v. Ketchum, 147 Mo. 209; Simpson v. Erisner, 155 Mo. 157. (2) The plaintiffs, who are the after-born children of Charles E. Carter, took no interest or title in the land, therefore they have no ground of complaint against defendant Long. Thomas v. Thomas, 149 Mo. 426. (3) Courts will not violate established rules of law in order to give effect to a supposed intention of the testator. Harbison v. Swan, 58 Mo. 147; Nichols v. Boswell, 103 Mo. 151.

BRACE, P. J.—In this case the circuit court of Pike county sustained a general demurrer to the plain-

tiffs' petition filed November 16, 1899, which is as follows:—

"Enoch Pepper Carter and Robert Hill Carter, minors, by their next friend, Courtland Reynolds, plaintiffs, v. James R. Long and Jno. J. Knight, defendants.

"Plaintiffs, who are minors and who sue by their next friend, Courtland Reynolds, state that they are children of Charles E. Carter, and that John C. Carter, senior, father of Charles E. Carter, died at his residence in the county of Pike and State of Missouri, on the ———day of————1876, testate, and that his will was duly admitted to probate by the probate court of Pike county, Missouri, on the twenty-fifth day of October, 1876, as well as a codicil to said will which was also admitted to probate on the same date.

"Plaintiffs further state that said will contained among other provisions the following: 'I give and devise to my son Charles Carter an undivided one-sixth part of said Lick place and an undivided one-sixth part of said home place,' and the codicil to said will contained the following provision: 'I herein devise and bequeath the part of my property mentioned in my will as bequeathed to my son Charles E. Carter, in trust to John J. Knight, for the children of said son, Charles E. Carter.'

"Plaintiffs further state that at the time of the death of John C. Carter, Sr., Margaret E. Carter was the only child of Charles E. Carter then in existence, and that all of the present plaintiffs were born since the death of said John C. Carter, Sr.

"Plaintiffs further state that letters of administration, with the will annexed, on the estate of John C. Carter, senior, were issued to John E. Forgey and Frank Patton by the probate court of Pike county, Missouri, and that thereafter upon application of said administrators to the probate court of Pike county, Missouri, for an order to sell real estate of the deceased for the purpose of paying debts and encumbrances, an

·order of sale was made by said court, under which order the said administrators sold the home in Pike county, Missouri, for about seven thousand dollars, and that an application was thereafter made for a renewed order of sale of the remainder of the said real estate embracing a small portion of the said home place and the following realty situated in the counties of Pike and Lincoln in the State of Missouri, to-wit: Two hundred and thirty-five and one-half acres, being that part of lot No. 1 of survey 1737, which lies in Pike county. Also 874.68 acres, being the east part of lot No. one of survey 1737, which lies in Lincoln county, the two last mentioned tracts being known as the Lick tract, and being the tract in which plaintiffs, as the children of Charles E. Carter, own an undivided one-fifth interest under said will.

"Plaintiffs further state that the sale of the home place occurred on November 13, 1877, and the sale of the Lick place occurred on April 2, 1878, the same being purchased by defendant James R. Long, and that previous to said sale of said Lick place the defendant Long entered into a conspiracy with his codefendant John J. Knight, who was a son-in-law of John C. Carter, senior, with the remaining sons-in-law of John C. Carter, senior, to buy in said Lick tract, ostensibly for the benefit of the heirs, for a nominal sum and for the purpose of defeating the will and preventing these plaintiffs as children of Charles E. Carter from being vested with any title in said land, and in furtherance of said scheme and conspiracy plaintiffs aver that said Long agreed to pay, and did pay to the adult sons and sons-in-law of John C. Carter, senior, certain sums of money for the purpose of inducing them to enter into said conspiracy and combination and act in accordance with his directions and not bid on said land, and permit it to go for a nominal consideration in order that the title thereto might not be clogged with these minors' interests and

that they might be defeated of their interest in said real estate, and that in pursuance of said conspiracy and combination between the defendant Long, who was also a son-in-law of said John C. Carter, senior, and the remaining sons-in-law and sons of John C. Carter, senior, they gave publicity to the fact that said Long was buying in for the benefit of the heirs, particularly the minor heirs, children of Charles E. Carter, and that this information was given particularly to prospective purchasers and bidders and was given with the design and intention of discouraging outside bids and preventing said land from bringing its actual value, in order that defendant Long might be enabled to purchase same for a nominal consideration. Plaintiffs further state that the result of said combination and conspiracy and of the false information given out by the actors in said combination, particularly by defendant Long, was that the said Long was enabled and did purchase the said Lick tract above described for the sum of $4,620, when in point of fact it was reasonably worth the sum $50,000. That bona fide outside bidders were deterred and prevented from bidding by reason of the false information given out by said Long and his co-conspirators that said land was being purchased by said Long for the benefit of the heirs, particularly the children of Charles E. Carter, and that all bidding other than that of James R. Long was thereby prevented by reason of the fraudulent conduct of defendant Long and his co-conspirators, and said land was sacrificed and the interest of these plaintiffs in said land was lost to them by reason of the fraudulent conduct of the parties engaged in said conspiracy.

"Plaintiffs further state that the defendant Long received a deed conveying to him all the right, title and interest of the deceased John C. Carter, senior, in said real estate, and that after his said purchase he went into possession of said real estate and has cut timber therefrom to the amount of seven thousand dollars and that

the rental value of said tract is $3 per acre per annum and that the defendant Long is still in possession of said real estate.

"Plaintiffs further state that the defendant John J. Knight was appointed trustee in and by the last will of John C. Carter, senior, and for that reason is made a party to this suit.

"Wherefore plaintiffs pray the court that defendant Long be adjudged to hold as trustee for plaintiff, a one-fifth interest in said real estate above described. That they be invested with the title to an undivided one-fifth interest in said Lick tract, and they further ask that the defendant Long be required to account to them and pay over one-fifth of the rents received by him or one-fifth of the net products of said real estate from April 2, 1878, up to the present time, and also for one-fifth of the value of the timber alleged to have been cut off of said premises by the defendant, and they further pray that the title to one-fifth of all of said real estate be adjudged to be in the plaintiffs upon such terms as to the court may seem just and proper, and that defendant Long be divested of the title to said one-fifth interest, and they further ask for such other orders and decrees and judgments as to the court may seem just and proper in the premises and for general relief."

The plaintiffs declining to plead further, and final judgment having been rendered against them, bring the case here by writ of error.

The defendants contend that the demurrer was properly sustained, because: It appearing from the petition that at the death of John C. Carter, Sr., Margaret E. Carter was the only living child of Charles E. Carter, and that plaintiffs were born several years after the death of the said John C. Carter, Sr., they acquired no interest in the real estate in question under his will and hence they have no cause of action against defendants on account of the grievances complained of in the petition.

The plaintiffs claim under the devise contained in the codicil. That devise is of the real estate in question to John J. Knight in trust for the children of Charles E. Carter, the son of the testator.

The plaintiffs are children of the said Charles E. Carter, born several years after the death of the testator. Of his will we have nothing except this fragment from which to discover his intention, and the only question in the case is: are the plaintiffs included in this devise as it stands alone in the petition?

If we follow the rules of construction laid down by all the text-writers and supported generally by the adjudicated cases, we must hold that they are not. [2 Jarman on Wills (6 Ed.), 165 to 180; 2 Redfield on Wills (3 Ed.), p. 10, et seq.; 2 Underhill on Wills, sec. 552, et seq.; Thomas v. Thomas, 149 Mo. 426, 73 Am. St. Rep. 405, and notes p. 413, et seq., and cases therein cited; Hollis v. Lawton, 107 Ga. 102, 73 Am. St. Rep. 114; Loockerman v. McBlair, 6 Gill 177, 46 Am. Dec. 664, and note on pp. 666, 667.]

In 2 Jarman on Wills (6 Ed.), p. 167, the rule applicable to such a devise deduced from the adjudicated cases is thus formulated: "An *immediate* gift to children (i. e. a gift to take effect in possession immediately on the testator's decease), whether it be to the children of a living or a deceased person, and whether to children simply or to all the children, and whether there be a gift over in case of the decease of any of the children under age or not, comprehends *the children living at the testator's death (if any)*, and those only."

In 2 Redfield on Wills (3 Ed.), p. 10, the rule is thus stated: "The general rule in regard to all bequests to a class is, that all who are embraced in the class, at the time the bequest takes effect, will be allowed to take. And consequently, as an interest devised under a will ordinarily takes effect at the death of the testator, unless some other time be appointed for it to come into operation, it will be so regarded, and the class ascer-

tained, as of that time.   And thus it often occurs that by this natural and established construction after-born children are excluded; and many times, no doubt, when there may be probable grounds to conjecture that they might have been intended by the testator to share in the bequest.''

And in 2 Underhill on Wills, sec. 553, the rule is thus stated: ''Where a gift is to children as a class in general terms, and no period is mentioned by the testator for the vesting of the legacy, the gift will be immediate. That is to say, the gift will vest in title and possession at the death of the testator.   Accordingly it is a general rule in these cases that only the children who have been born or begotten prior to that date, and who are *in esse,* including a child *en ventre sa mere,* at that time, will be entitled to a share in the distribution.''

This rule is entirely consistent with other well-established rules, whereby it is ruled, that when a gift vests in title at the death of the testator but not in possession until a subsequent period, then all the children *in esse* at such subsequent period will be entitled to share in the devise.   Thus, if this devise had been to Charles E. Carter for life, remainder to his children, then, the title to the remainder at the death of the testator would have vested in Margaret E. Carter, the then only living child of the said Charles E. Carter, but would thereafter open to let in any child or children of the said Charles E. Carter born or begotten after the death of the testator, and plaintiffs would have been entitled to share in the remainder.   Of the application of this rule our reports furnish many illustrations, of which the three cases cited by counsel for plaintiffs are exemplars.   But there is no remainder to be so treated in this case and those cases are not in point on the question in hand.

So, also, if this devise had been to John J. Knight in active, executory trust for the children of said Charles E. Carter, then not only the child or children of said Carter *in esse* at the death of the testator, but all of such chil-

dren as should thereafter be born before the trust was executed would have been entitled to share in the devise, and if the plaintiffs had been so born they would have been so entitled. But no active executory trust was created by this devise, and under the Statute of Uses, the nominal or dry trust created by the words used therein was executed as soon as the will went into effect, i. e., at the death of the testator, and in legal effect the devise was the same as if made directly to the children. [R. S. 1899, sec. 4589; Perry on Trusts (5 Ed.), sec. 298, and cases cited in brief of counsel for D. E.]

From what has been said it seems clear that according to well-established rules of construction, the plaintiffs were not included in the devise set out in the petition, and thereby acquired no interest in the lands in question. But it is contended for plaintiffs in error that in construing wills such rules must be subordinated to the intention of the testator, and as he used the plural word "children," in the devise, he meant all the children of Charles E. Carter whenever born. He may have so meant, but that he did so mean is at best but conjecture. The will is not before us, from the whole of which to deduce his intention, and in the absence of any other light as to his intention except this isolated clause, the meaning attributed to it by well-established rules of construction must be given to it.

The fact that there was only one child when he died, sheds no light on the testator's intention. When the will was executed or when he died does not appear, and it is not all probable that when he executed the will he knew when he would die, or how many children his son would have at that time. The demurrer was properly sustained and the judgment of the circuit court is affirmed.

All concur, except *Robinson, J.*, absent.