OTTILLIE BLUMENTHAL et al. v. AUGUSTUS A. BLUMENTHAL et al., Appellants.

Division Two, June 28, 1913.

1. **DEED: To Trustee: No Duty.** The title to land conveyed by a deed to a trustee which imposed upon him no duty whatever passed at once to the beneficiaries named therein.

2. **————: Ambiguous: North Half: Meaning.** The words "north side" and "north half" may mean the north half of a building on the ground described, and not the north half of the area.

3. **————: Ambiguous: Construction: North Side or Half: Not of Area, But of Building.** A deed which undertook to convey 86 feet of ground fronting on the east side of a street by 150 feet deep, when in fact the tract, identified by other calls, fronted 82 feet on said street and was 163 deep, and which undertook to convey to one son for life "the north side" of said premises and "the title to that half of said property" to a daughter of said son and the heirs of her body, and to convey

Blumenthal v. Blumenthal.

to two daughters of said grantor "the southern half of the premises heretofore described," subject to a life estate for another son, when on the northeast corner of the plot was a three-story brick building fronting 48 feet on the east side of said street, and extending eastward 55 feet along an east-and-west street, in which was a hallway eight feet wide extending from west to east through the entire building and from the first floor upward to the third, dividing the three-story building in the middle, the first story of which was fitted up for stores and the second and third stories for residence purposes, is ambiguous and uncertain, both in its description, and in the portion of said tract it undertook to convey to the various grantees; and it is *held*, that it did not intend to convey to the one son and his daughter one-half in area of the 82 feet, or the north 41 feet of said tract, but the "north side" or "half" of the 48-foot building, the purpose of the deed being to divide the property with the center line of the hall.

4. ————: ————: **Parol Evidence: Meaning Parties Placed on Deed.** Where a deed is ambiguous, the intention of the parties may be sought by inquiring into the condition of the property and the uses to which it was put. And the interpretation placed upon the deed by the parties themselves is very persuasive of its meaning. Where the deed granted the "north side" of a lot fronting 82 feet on the east side of a street to an older son for life and "that half" to his daughter in remainder, and "the southern half" to a younger son for life, with remainder in two unmarried daughters, and there was a 48-foot brick building on the north side of the lot, three stories high, with an eight-foot hall running the entire length through the middle, with a store on each side of the hall on the first floor, and the upper stories arranged for residence purposes, the grantor did not intend to give to the younger son and two daughters only a seven-foot strip of a three-story building and 34 feet of vacant ground of small value; and the fact that immediately after the deed was executed, the two sons took possession of the building, the older of the north half, the younger of the south half, and each held possession of that half for twenty-six years, is very persuasive that the intention of the grantor was to make the middle line of the hall, and not the middle line of the 82 feet of ground, the dividing line.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

AFFIRMED.

*J. L. Hornsby* for appellants.

(1) In construing a deed every part should be given effect. Chew v. Kellar, 171 Mo. 223; 17 Am. & Eng. Ency. Law (2 Ed.), p. 7, n. 3. (2) Parol testimony is not permissible to vary or control the words of a grant in a deed. Wolff v. Dyer, 95 Mo. 545; Jennings v. Brizeadine, 44 Mo. 332. (3) The word "half" where used in the deed in defining the respective interests of appellants and respondents should be construed literally, and means half in quantity. Boom Co. v. Whitney, 26 Mich. 42; Dart v. Barbour, 32 Mich. 267; Owen v. Henderson, 16 Wash. 39; Winslow v. Cooper, 104 Ill. 235; Cogan v. Cook, 22 Minn. 137.

*M. W. Feuerbacher* for respondents.

(1) Nothing but monuments can control courses and distances. Where the land is described by another's land, the latter tract of land is a monument of description, and the true line of his land will control the courses and distances given in the deed. Tiedeman Real Property (3 Ed.), p. 878-9, par. 603; Peaslee v. Gee, 19 N. H. 273; Park v. Pratt, 38 Vt. 552; Smith v. Land & Imp. Co., 117 Mo. 444; Harding v. Wright, 119 Mo. 9; Whittaker v. Whitaker, 175 Mo. 11. (2) To render a deed or other instrument ambiguous, or void for uncertain description, the ambiguity must be patent, and appear on its face; but where the deed or instrument appears certain and without ambiguity and the uncertainty arises by matter outside of the instrument, then it contains a latent ambiguity and may be explained by the application of extrinsic evidence. Hardy v. Matthews, 38 Mo. 124; Lego v. Medley, 79 Wis. 218; Robards v. Brown, 167 Mo. 457; Goff v. Roberts, 72 Mo. 573; Schreiber v. Osten, 50 Mo. 516; Morgan v. Burrows, 45 Wis. 217; Jones v. Pashby, 62 Mich. 614. (3) The meaning that the

parties attached to the language employed, especially in matters of description, may be shown by parol evidence relating to the situation and condition of the subject-matter. Devlin on Real Estate (3 Ed.), sec. 1015a, p. 1937; Lego v. Medley, 79 Wis. 211; Lyman v. Babcock, 40 Wis. 512. (4) A controlling principle in the construction of deeds as well as of wills and other instruments in writing, is to ascertain the meaning of the grantor from the words he uses, in the light of the circumstances which surrounded, attended and waited upon his use of them. Long v. Timms, 107 Mo. 512; Carter v. Foster, 145 Mo. 392; Speed v. Terminal Ry. Co., 163 Mo. 124; Aldridge v. Aldridge, 202 Mo. 572; Ganson v. Madigan, 15 Wis. 154; Railroad v. Frowein, 163 Mo. 17; Construction Co. v. Tie Co., 185 Mo. 62; Bernero v. Real Estate Co., 134 Mo. App. 299. (5) There can be no universal rule that the word half shall be interpreted in its ordinary meaning of one-half of the quantity, for it is often used in conveyances when the context indicates a sense quite different. Jones v. Pashby, 48 Mich. 637, 62 Mich. 614; Iron M. Co. v. Mining Co., 80 Mich. 491; Wolfe v. Dyer, 85 Mo. 545; Devlin on Real Estate (3 Ed.), sec. 1042, p. 2025; Grandy v. Casey, 93 Mo. 595.

BROWN, P. J.—Action to determine and quiet title to real estate. From a judgment for plaintiffs, defendants appeal.

August A. Blumenthal, Sr., a citizen of St. Louis, was the father of four children; two sons, August A. Blumenthal, Jr., and Berthold W. Blumenthal; and two daughters, Paulina Blumenthal and Otillie Blumenthal.

On January 26, 1876, and only a few months before his death, said August A. Blumenthal, Sr., conveyed to one John N. Straat, as trustee for his sons and daughters above named, a parcel of land in St. Louis City, which parcel of land has a frontage of

eighty-two feet on the east side of Broadway street (then known as Main street), bounded on the north by Elwood street, on the south by the homestead of said grantor, and extending back eastward from said Broadway street an average depth of 163 feet to the right-of-way of the St. Louis, Iron Mountain & Southern Railway Company.

On the northwest corner of this parcel of land was and is situated a three-story brick building, fronting forty-eight feet on Broadway street and extending eastward along the south boundary of Elwood street about fifty-five feet.

The front entrance to this building is on Broadway street, where there is a hallway about eight feet wide extending from west to east through the entire building, and from the first floor upward to the third floor thereof. The several floors of said building are connected by stairs in the above-mentioned hallway. The hallway divides the three-story building in the middle, and the first floor is fitted up for stores, and the second and third floors for residences or other purposes.

On the north side of this parcel of land, and in the rear of the three-story building before described, are two small one-story brick buildings fronting on Elwood street, neither of which extends southward from said Elwood street more than twenty feet.

This parcel of land, eighty-two feet wide north and south, by an average depth of 163 feet, was in the condition hereinbefore set out, when August A. Blumenthal, Sr., conveyed the same to Straat, as trustee, for the use of his two sons and two daughters, hereinbefore named, by deed, which reads as follows (Italics are ours):

"This deed, made and entered into this twenty-sixth day of January, A. D. 1876, by and between Augustus A. Blumenthal, party of the first part, of the city and county of St. Louis and State of Missouri,

and John N. Straat of the same place, party of the second part, and Augustus A. Blumenthal, Jr., and Paulina and Ottillie Blumenthal and Berthold W. Blumenthal, parties of the third part. Witnesseth: That said party of the first part, in consideration of one dollar to him in hand paid by the said party of the second part, and in further consideration of the natural love and affection which he has towards the said parties of the third part, has granted, bargained and sold unto the said party of the second part in such manner as will hereafter be fully explained, a lot of ground situated in South St. Louis, Missouri, having a front of eighty-six feet on the east side of Main street, running back eastwardly of that width one hundred fifty feet, more or less, up to the Iron Mountain Railroad track, bounded west by Main street, north by Elwood street, east by railroad track and south by ground heretofore owned by the grantor and given to his wife during her natural life, and being about eighty-six feet off the northwest corner of block No. 7 of Eiler's survey of the town of Caron-delet, which is now city block No. .... the right of the third parties is such as herein named, that August-us A. Blumenthal, Jr., having the *north side* of the heretofore described premises during his life, and at his demise his daughter Genevieve will hold the prem-ises to herself and the heirs of her body forever. Pro-vided, however, in case if said Genevieve shall die before the death of her father, leaving heirs of her body living at the time of the death of her father, the title to *that half* of said property conveyed to Augustus A. Blumenthal, Jr., shall go and vest in the heirs of the body of said Genevieve and to their heirs and assigns forever. In case said Genevieve shall die without leaving heirs of her body then and in such a case the title to her share shall got to and vest in the heirs of the said party of the first part and their heirs and assigns forever. Paulina and Ottillie

to get the *southern half* of the premises heretofore described under the condition as herein provided in fee simple that Berthold W. Blumenthal has the possession of their property *during his life* and after his demise they will be entitled of all rights, rents and profits deriving from said premises, but in case one of them should die the estate will go to her sister, but instead if both should die without leaving any heirs of their body, then the estate will go and vest under the same conditions to the heirs of the grantor in common, but if they should die and leave any heirs of their body, the estate will go and vest in them and their heirs and assigns forever. In all other respects Aug. A. Blumenthal, Jr., shall be tenants in common as far as the payment of taxes, insurance and repairs is concerned, with Berthold W. Blumenthal, *the property* is now insured in the Home Mutual in St. Louis for six years. Now, when the six years run out I want them to insure in four good mutual companies, in each one for fifteen hundred dollars. Now, if Berthold W. Blumenthal and if Augustus A. Blumenthal, Jr., shall promptly pay the taxes and insurance when due *and shall keep the house in good order and repair,* then in that case no rent shall be collected from them under no pretense whatever. To have and to hold said described premises and all rights, privileges and appurtenances thereunto belonging as herein conditioned unto him the said John N. Straat and his successor or successors in trust as herein has been described. In witness whereof, the said party of the first part and second part have hereunto set their hands and seals the day and year first above herein written.

"AUG. A. BLUMENTHAL,        (Seal)

"JNO. N. STRAAT, Trustee.    (Seal)"

The real purpose of this action is to construe the above-quoted deed.

The learned trial judge being of the opinion that the foregoing deed possessed certain latent ambigui-ties admitted oral evidence showing the situation of the property, and that immediately after the deed was executed said August A. Blumenthal, Jr., took posses-sion and used the north half of the three-story brick building, and permitted his brother, Berthold W., to use the south half thereof until his death, which oc-curred in 1907. After the death of Berthold W. Blum-enthal (in 1907) his brother, August A. Blumenthal, Jr., one of the appellants, asserted title to the whole north forty-one feet of the land conveyed by the deed, which forty-one feet covers one entire half in area of the eighty-two feet conveyed by the deed of his an-cestor, and takes all of the three-story brick building except about seven feet on the south side thereof, whereupon this suit was instituted against said Au-gust A. Blumenthal, Jr., and his heirs by Ottillie Blum-enthal and her sister, now Paulina Newell, who assert title under the aforesaid deed to all of that part of the eighty-two feet conveyed by the deed which lies south of a line running from west to east through the center of the hallway in the aforesaid three-story brick build-ing. Plaintiffs concede that August A. Blumenthal, Jr., and his heirs are the owners of a strip of land twenty-four feet and three-fourths of an inch wide off of the north side of the eighty-two foot parcel of land described in the deed.

The evidence further shows that the eighty-two foot strip of land conveyed by the deed was platted in the special tax department of the city as two sep-arate parcels or lots ''forty-three feet wide on Broad-way'', and that during the tenancy of the three-story brick building by August A., Jr., and Berthold Blumen-thal, Berthold paid general taxes on the ''south forty-three feet'', and August A., Jr., on the ''north forty-three feet'' of the tract; it thus appearing that the city collected taxes on four feet more of land than

was owned by the grantees in said deed. There were a few years' taxes delinquent when this suit was instituted.

The evidence further shows that seven special tax bills for street improvements were recently assessed against the "north forty-three feet" of land described in the deed, and that August A. Blumenthal, Jr., has paid one of said special tax bills, and has also paid special tax bills for sprinkling the street.

There was also evidence tending to show that August A. Blumenthal, Jr., has paid the fire insurance on the entire three-story brick building since 1876.

The evidence is undisputed that the south thirty-four feet of the eighty-two foot parcel of land conveyed by Blumenthal, Sr., was at the time of the execution of said deed, and still is, vacant and used by the occupants of the three-story building as a means of going around said building to the rear entrance thereof. It is, in fact, the only method of reaching the rear of said three-story building with wagons, the existence of the railroad preventing an entrance onto said land from the east end thereof. It was proven that this unoccupied thirty-four feet was worth only twelve dollars per front foot in 1876, when the deed was made.

After hearing the evidence the court, sitting without the aid of a jury, entered the following judgment sustaining the contention of plaintiffs:

"It is therefore ordered, adjudged and decreed by the court that the defendant Augustus A. Blumenthal, Jr., became and now is seized of an estate under and by virtue of the said deed executed by the said Augustus A. Blumenthal, Sr., to John N. Straat, trustee, dated the 26th day of January, 1876, and recorded in book 543 at page 182 of the Records of the office of the Recorder of Deeds of the city of St. Louis, for and during his natural life, in and to so much of the land described in said deed as lies north of a point

in the east line of Broadway twenty-four feet and three-quarters of an inch south of the south line of Elwood street (fifty feet wide) and extending east-wardly and parallel with the south line of said Elwood street to the right-of-way of the St. Louis, Iron Mountain & Southern Railway Company, said line dividing the said three-story brick building located upon the land described in said deed into two equal parts, and passing through the middle of the hallway leading into said building and extending through the same from west to east, with remainder to Genevieve Blumenthal, now Genevieve Elstrat Steidle, under the conditions mentioned in said deed.

"And it is further ordered, adjudged and decreed by the court that Berthold W. Blumenthal, one of the parties of the third part mentioned in said deed, and a son of the grantor therein, became upon the execution thereof, and was at the time of his death in January, 1907, seized of an estate for life in so much of the land described in said deed as lies south of the aforesaid line dividing said three-story brick building into two equal parts, and that at and upon his death the plaintiffs Pauline Newell, wife of Wallace E. Newell, and Ottilie Blumenthal became and now are seized as joint tenants under the provisions of said deed, of that part of the land described therein and in this decree which passed under said deed to said Berthold W. Blumenthal for and during his natural life.

"It is still further ordered, adjudged and decreed by the court that the said Augustus A. Blumenthal, Jr., and those who will take after him under said deed, upon his death, and the said Pauline Newell and Ottilie Blumenthal, and those who take after them under said deed shall have and enjoy a common easement in and to said hallway and stairs dividing the said three-story brick building into two equal parts, and the burden of keeping said hallway and stairs in good

repair is, by this decree, imposed upon the owners of the north half and the south half of said building in equal shares.

"And it is still further ordered adjudged and decreed by the court that this decree shall not be a bar to an accounting between any of the parties hereto for rents collected or moneys paid out for taxes, insurance or repairs on the above described premises, and that the costs of this proceeding shall be divided equally between the plaintiffs Ottilie Blumenthal and Pauline Newell on the one hand, and Augustus A. Blumenthal, Jr., on the other hand, and that execution issue therefor accordingly."

In their motion for new trial the defendants assign as errors of the trial court: (1) The admission of improper evidence; (2) the exclusion of proper and competent evidence, and (3) a misconstruction of the deed executed by Blumenthal, Sr., which is the common source of title of the parties.

I. It is not apparent why John N. Straat was made a trustee in the foregoing deed. No duty was cast upon him by that instrument, and if he received any title under its provisions that title passed through

**Dry Trust.** him like water through a sieve and became immediately vested in the parties of the third part under the Statute of Uses, section 2867, Revised Statutes 1909. [Carter v. Long, 181 Mo. 701.]

II. The chief contention of appellants is that the deed before quoted is not ambiguous or uncertain, but that it unequivocally grants to

**Construction of Deed.** August A. Bulmenthal, Jr., and to his heirs, the full north half *in area* of the eighty-two foot strip of land owned by Blumenthal, Sr. Can this insistence be sustained?

In our judgment the deed is ambiguous. The first latent ambiguity arose when a surveyor measured the land conveyed by Blumenthal, Sr. Instead of finding a parcel of land eighty-six feet wide, north and south, by one hundred and fifty feet long, east and west, as recited in the deed, he found that between the boundaries named in the deed there is a parcel of land only eighty-two feet wide fronting on Broadway, and having an average depth of one hundred sixty-three feet.

There are words used in this deed which, under a strained interpretation, might be held to impart a desire on the part of Blumenthal, Sr., to vest in August A. Blumenthal, Jr., the whole north half in area of the eighty-two foot parcel of land conveyed; but when all parts of the deed are considered together, there is little to be found in its provisions to support said contention of appellants.

The only clause of the deed which purports to convey any specific part of the land to August A. Blumenthal, Jr., himself, is as follows:

"The right of the third parties is such as is herein named, that August A. Blumenthal, Jr., having the *north side* of the heretofore described premises during his life, and at his demise his daughter Genevieve will hold the premises to herself and the heirs of her body forever."

This last quoted clause of the deed does not purport to convey any definite quantity of land, and if it were not for subsequent language descriptive of the part which his descendants should take upon the happening of certain things, the grant to August A. Blumenthal, Jr., would be void for uncertainty. [An ambiguity patent: Bell v. Dawson, 32 Mo. 79; McCormick v. Parsons, 195 Mo. 91; and 2 Devlin on Deeds (3 Ed.), p. 1913.] August A. Blumenthal, Jr., is in almost as poor a position to stand upon the very words of his deed as was a certain descendant of

Jacob, who is said to have stood upon the "penalty and forfeit" of his bond with disastrous results to himself. Immediately following the words of the deed which appellant contends vested in him and his daughter the *north half in area* of the eighty-two foot parcel of land, the following clause appears:

"Provided, however, in case if said Genevieve shall die before the death of her father, leaving heirs of her body living at the time of the death of her father, the title to *that half of said property conveyed to Augustus A. Blumenthal, Jr.,* shall go and vest in the heirs of the body of said Genevieve and to their heirs and assigns forever."

The words "that half of said property conveyed to Augustus A. Blumenthal, Jr.," seek a construction of the words "north side" of the heretofore described property, so that when we hark back to the only words which attempt to define the area of land conveyed to August A. Blumenthal, Jr., a serious doubt is cast upon the meaning of the last quoted clause of the deed which refers to "that half of said property conveyed to Augustus A. Blumenthal, Jr."

The words "property conveyed" in their usual sense would be the land conveyed, but as there had, in fact, been no definite amount of land conveyed to appellants, we may well consider the remainder of the deed to ascertain what was the intention of the parties thereto.

From the fact that Blumenthal, Sr., misdescribed the shape and area of his lot, thereby indicating that he cared little or nothing for the area he was conveying, and the further fact that he used the words "the property" to indicate the three-story building, in prescribing how it should be insured and repaired, strongly tend to sustain the conclusion of the trial court that the grantor's mind dwelt upon the three-story building, and not upon the area of the land when he ex-

ecuted this deed of gift to his children; also that he intended to divide the land upon which the building stood, equally between his sons August A., Jr., and Berthold W. Blumenthal during their lives with remainders as recited in the deed.

That the elder Blumenthal intended to convey to Berthold W. and his sisters Paulina and Ottilie a seven-foot strip of the three-story building is almost unbelievable. Said strip contained no entrance and would have been valueless to said grantees for actual use, and its transfer to them could only have resulted in friction and litigation among his children. It cannot be supposed that the grantor would expect Berthold to assume part of the expense of insuring, repairing and paying taxes on a small strip of a building which he could not use. Therefore, as the words of the grant, so far as August A. Blumenthal and his descendants are concerned, are ambiguous, we are fully justified in seeking the intent of the parties by inquiring into the condition of the property and the uses to which it was intended to be applied. When contracts or deeds are ambiguous the meaning placed upon such instruments by the parties thereto while living is very persuasive in ascertaining their true intent. [Carter v. Foster, 145 Mo. 383, l. c. 392; Moran Bolt & Nut Mfg. Co. v. Car Co., 210 Mo. l. c. 736.] "Tell me what you have done under a deed and I will tell you what that deed means," is the substance of the above rule quoted with approval in the case last cited. After duly considering the fact that the heirs of August A. Blumenthal, Jr., were given the same property in which August A., Jr., was given a life estate, and no more; that August A., Jr., permitted his brother Berthold to occupy the south half of the building during a period of twenty-six years without objection, together with the other evidence in the case, we are convinced that the matter of claiming for himself and his heirs more of the property than the trial court

awarded them was a mere afterthought coming to the mind of August A. Blumenthal, Jr., since the death of his brother.

Whether or not the ambiguity before mentioned in the language of the grant to August A. Blumenthal, Jr., and his children is such as to render said grant void for uncertainty, is not necessarily before us for review in this case, because the respondents concede to appellants the amount of land which the trial court awarded them, and have not appealed from the judgment.

The judgment of the trial court is fully sustained by the law and the evidence and should be affirmed. It is so ordered. *Walker* and *Faris, JJ.*, concur.