ALTON R. EASTON et al., Appellants, v. HAZEL KIRK DEMUTH et al., Respondents.

St. Louis Court of Appeals. Argued and Submitted December 3, 1913. Opinion Filed December 31, 1913.

1. WILLS: Construction: Trusts: Active Trusts. A devise of real estate to testator's son, "in trust for his children, to support and educate them," created an "active trust," in that it required the exercise of discretion by the trustee.

2. TRUSTS: Active Trusts: Termination. An active trust, which requires the exercise of discretion by the trustee, cannot be terminated at the will of the *cestui que trust.*

3. WILLS: Construction: Trusts: Beneficiaries. The trust created by a devise of real estate to testator's son, "in trust for his children, to support and educate them," being an active

trust, a child born to the son after testator's death would be a beneficiary.

4. ———: ———: **Trusts: Title and Duties of Trustee.** Under a devise of real estate to testator's son, "in .trust for his children, to'support and educate them," the son is only bound to provide reasonably for his children's support and education while they remain in his household, and if they leave his household, as by marrying, or their education is completed, he is not required to further provide for their support from the trust fund, nor is he bound to render an accounting of his expenditures or expenses connected with the fund; the real estate being given to him absolutely, subject .only to the trust in the income derived from it, that such income should be used for the support and education of his children so long as they needed to be educated or continued as members of his family.

Appeal from St. Louis City Circuit Court.—*Hon. Charles Claflin Allen*, Judge.

REVERSED AND REMANDED (*with directions*).

*Rodgers & Koerner* for appellants.

(1) The trust involved is an active trust. Donghy v. Noonan, 176 Mass. 467. Hence, Theodore Demuth Easton, the child born after testator's death, is a beneficiary, and any children of plaintiff hereafter born, if any there be, will be beneficiaries. Carter v. Long, 181 Mo. 701. (2) A father, receiving a bequest in trust for the maintenance of his children, is bound to reasonably provide for their maintenance so long as they remain members of his household, but that is the extent of his obligation. He is, not required to account for his expenditures, and so long as he provides reasonable support for his family he performs his full duty and is entitled to retain for his own use any surplus ·that may remain. The children have no rights except to reasonable support while they remain at home as members of their father's household. Lewin's Law of Trusts (12 Ed.), pp. 157, 158, 159; Perry on Trusts, sec. 118, p. 169; Browne v. Paull, 1 Sim. (N. S.) 92; Hadow v. Hadow, 9 Sim. 439; Leach v. Leach,

13 Sim. 303; Carr v. Living, 28 Beavan, 644; Hora v. Hora, 33 Beavan, 88. Respondents have become forisfamiliated, that is, have ceased to reside at home as members of their father's household. Hence, their interest in the trust fund has terminated. Bowden v. Laing, 14 Sim. 111; Staniland v. Staniland, 34 Beavan, 536; Lewin's Law of Trusts (12 Ed.), pp. 157, 158 and 159. Appellant Wright Johnston Easton, though of age, has continued to reside at his father's home as a member of his household. Hence, he is entitled to maintenance out of the trust fund. Scott v. Key, 35 Beavan, 291; Lewin's Law of Trusts (12 Ed.), pp. 157, 158, 159. (3) Respondents, with full knowledge of all the facts, have acquiesced in the trustee's course of dealing with the trust estate for many years. They should not now be heard to complain of that of which they knew and to which they tacitly assented.

*John A. Blevins* for respondents.

(1) The trust created by the will in question is a direct or express trust, and Alton R. Easton, the trustee, acquired no beneficial interest in the trust property. Foster v. Friede, 37 Mo. 37; Chase v. Chase, 2 Allen, 101; Loring v. Loring, 100 Mass. 340; 1 Perrine on Trusts (3 Ed.), secs. 117-120; Woodruff v. Woodruff, 54 N. Y. App. Div. 414. (2) Theodore Demuth Easton acquired no beneficial interest in the trust property in question, but whether he did or not is entirely immaterial to the issues presented herein. Carter v. Long, 181 Mo. 701. (3) The trustee having misappropriated part of the trust property and intermingled the trust moneys with his own, and being insolvent and unable to give a bond, is subject to removal by a court of equity. Gaston v. Hayden, 98 Mo. App. 683; Lowe v. Montgomery, 117 Mo. App. 273; Davis v. Hoffman, 167 Mo. 573; Gartside v. Gartside, 113 Mo. 348.

STATEMENT.—The last will and testament of one Alton R. Easton, of the city of St. Louis, contained this clause: "I give and devise to my son, Alton R. Easton, of the city of Sedalia, State of Missouri, the following described real estate in the city of St. Louis," (describing the property.) "The above described property is left in trust for his children to support and educate them." The testator died December 11, 1893. At the time of his death, his son, Alton R. Easton, appellant here, had four children, two daughters, Emeline and Hazel, and two sons, Alton R., Jr., and Wright, all minors at the death of their grandfather. After the death of the grandfather, another son, Theodore, was born to Alton R. Easton. Mr. Easton took charge of the property, improved real estate, and collected the rents thereon, mingling them with his own funds and using them in ordinary family expenses, his five children, parties here, residing with him. In January, 1898, he filed a petition in the circuit court of the city of St. Louis, under the above caption, making all of his surviving children defendants and asking for authroity to borrow money on the property. Authority was granted. Afterwards and in this same case, he prayed for authority to sell the property. Authority was granted and a sale made at the price of $6500. Deducting the amount due on the property for the loan, taxes, etc., there remained the net sum of $3124.80, which, on July 8, 1908, he deposited with the clerk or registry of the court, it possibly drawing interest. From time to time Mr. Easton submitted reports of his recepits and disbursements, which were approved by the court. In April, 1909, he petitioned the court for leave to withdraw the fund that he might invest it in real estate in Sedalia; he also asked for an allowance for various expenditures and for money for the support and education of his two children, Wright and Theodore, who were living with him. The application of the father to withdraw the fund and invest it in real estate

in Sedalia was denied. Thereupon he filed a petition for leave to invest the fund in approved security. In February, 1910, the daughters Emeline and Hazel, both married, and the son Alton, Jr., filed a petition in this cause in the circuit court to require Mr. Easton, as trustee, to make a report in writing of the property and money received and collected by him as trustee and to account therefor, and charging mismanagement and appropriation and incompetency, as well as failure to make full reports of his receipts and disbursements, and averring that their father had not paid over their share to them or accounted for it, asked that he be required to report his receipts and disbursements during the sixteen years he had controlled the property; that he set forth the names of all persons from whom he had received any rents, interest or other proceeds from the trust estate, giving dates and amounts, and also set out the names of persons to whom disbursements have been made out of the trust fund, as well as the dates and amounts, showing the amounts paid to each beneficiary, or on their account, with dates of payments; that in connection with such report he be required to file all receipts and vouchers for payments by him, and that on the filing of the account and report the same be referred to a commissioner to examine it, and that he, Alton R. Easton, be removed as trustee and that a reliable trust company be appointed as trustee to take charge of the fund and reinvest it for the use of the beneficiaries of the trust, they claiming to be of the beneficiaries.

In answer to this, Mr. Easton, stating that since the deposit of the $3124.80 with the clerk of the court, he had never drawn any sum therefrom, asked for an allowance out of that fund for the education of his minor son, and a further allowance for the son who is living with him. The court denied this application and entered up an order requiring Mr. Easton to forthwith make a report in detail of his administration of the

fund, as requested by the three defendants, and over-
ruled his application for an allowance. Mr. Easton
failing to file the account as ordered, the court entered
up a finding that the conduct of Mr. Easton as trustee
was disapproved, that he be removed as trustee, the
court appointing another "as trustee" in his stead.
From this Alton R. Easton and his sons Wright and
Theodore, filing motions for new trial, have duly ap-
pealed to this court.

In the course of the hearing on the application for
an accounting and removal, testimony was taken from
which it appears that at the time of the death of the
testator, his son Alton R., one of the appellants here,
was about forty years of age and married. His first wife
dying, he remarried. He also had other children than
here named, born of the second marriage. Whether
this second wife was living at the time of the trial,
or when the two children died, does not appear. Mr.
Easton was about fifty-seven years of age in 1911. It
further appears that until married, the daughters
Hazel and Emeline had been members of their father's
household, had been maintained by him in the ordinary
manner of children by their parents; so had the son,
Alton, Jr., until, when about twenty years of age, he
left the home and has since supported himself. The
other two sons, Wright, about twenty-four years of
age, and Theodore, a minor, are now members of the
family and household of their father, the latter still
attending school at the expense of his father. It fur-
ther appears that Mr. Easton is now and always has
been a man of very moderate means; at the time of
his father's death and from that time on has appar-
ently depended on a salary. He kept no books of his
expenditures on account of his children but had ac-
counts of his receipts. As long as he was deriving any
income from the property he had used it for ordinary
expenses of the family, as the family was constituted

from time to time, and for the education of his children.

REYNOLDS, P. J. (after stating the facts).—The foregoing is not a very full statement of the long proceedings in this case, it having been in court ever since 1898, and many orders entered in it, but is thought to be sufficient to an understanding of the real issue involved in this appeal. That is, the nature of the title or estate which Alton R. Easton took under the clause of the will of his father which we have set out above.

Counsel for appellants claim that the trust here created is an active trust. Counsel for respondents refer us to 1 Perry on Trusts (3 Ed.), secs. 117 to 120, in support of their claim that this clause creates a direct or express trust. Counsel for appellants, as well as those for respondents, cite us to Carter v. Long, 181 Mo. 701, 81 S. W. 162, in support of their several contentions. Consideration of that case and of the authorities referred to in it, leads us to the conclusion that the trust created by this clause of the will before us, falls into the class of active trusts. It is an active trust in that it is one "requiring the exercise of discretion on the part of the trustee. Therefore it is not to be terminated at the will of the *cestui que trust.* Claflin v. Claflin, 149 Mass. 19; Young v. Snow, 167 Mass. 287." [Danahy v. Noonan, 176 Mass. 467.]

Being an active trust, Theodore Demuth Easton, the child born after the testator's death, is a beneficiary, as would be any other children of Alton R. Easton which may be hereafter lawfully born to him. Carter v. Long, supra, commencing at foot of page 709.

It is well to say here that outside of the above cases as to the character of the trust, very few cases of like character have come before our American courts —none before the courts of our own State. So that in passing upon the incidents of an estate or trust of like character as that before us, we have had resort to

the English decisions where like cases have often been determined. It is true that counsel for respondents refer us to Woodruff v. Woodruff, 54 N. Y. App. Div. 414, l. c. 417; Chase v. Chase, 2 Allen (Mass.), 101, and Loring v. Loring, 100 Mass. 340, but we do not think that on their facts, on the terms and construction of the wills and on the character of the legacies there considered, they are applicable to the case at bar.

Taking up the consideration of this clause of the will, and treating it as creating an active trust, the father receiving the property in trust for the support and education of his children, is bound to provide reasonably for their support and education, only so long as they remain members of his household and are to be educated. If they leave the home, if they cease to be of the household of the father, especially if a son or daughter marry and set up a separate household; if their education, so far as intended, is completed, he or she is no longer entitled, in law, to look to the parent for support or education out of the fund; is no longer to be considered as falling within the class of those provided for in this clause, "for it can scarcely be supposed that the testator meant an income given with reference to one establishment, to be split in as many different incomes as there are children." [Lewin's Law of Trusts (12 Ed.), p. 159, sec. 14.]

In Bowden v. Laing, 14 Simons, *113, it is said (l. c. *115): "When the income of property is given, as it is in this case, to the mother, for the maintenance of herself and her children, what is intended is, that she shall receive the whole of the income, and shall maintain the children out of it so long as they form part of her family. But when they are forisfamiliated, they lose the right to maintenance." It is further there held that on the marriage of one of the daughters, her right to maintenance ceased and that on the death of the other daughter, the mother was entitled to have the property transferred to her absolutely.

That leaving the family destroys the right to participate in a fund providing for the support of the children by the parent, is also held in Staniland v. Staniland, 34 Beavan, 536.

In Wilson v. Bell, 4 L. R. Chan. App. 581, the clause in the will construed is very like the one before us. It was held by the court that the devise is in the nature of "a gift on a condition, or a trust." The court held that one of the children, whose maintenance was provided for in the will, having left the home of her parent of her own accord, had put it out of the power of the one holding the gift or trust to perform the trust any longer as to her, and was not entitled to claim any benefit of the gift.

So that as to the two daughters and the son Alton, who had left the paternal home, they are out of the terms of the devise, gift or trust and have no further interest in it.

Nor is Mr. Easton, even treating him as a trustee, bound to account for the income or its expenditure, it not being contended that he had not supported and educated his children while residing with him, properly and according to his ability. In point of fact, ever since July 8, 1908, when he deposited the fund with the clerk of the court, he appears to have provided for his family out of his own means and without drawing on the fund.

"In cases where a trust for the maintenance of children is implied, the person bound by the trust is regarded in the same light as a guardian of a lunatic or of a minor; he is entitled to receive the fund, and can give a valid receipt for it; and so long as he discharges the trust imposed upon him, he is entitled to the surplus for his own benefit, nor is he obliged to account for the past application of the fund. And the future application is very much according to his discretion, provided he educates and supports the children reasonably, according to their position in the world

.and the intention of the testator.'' [1 Perry on Trusts (3 Ed.), sec. 118. To the same effect, see Lewin on Trusts, sec. 13, p. 158.]

In Browne v. Paull, 1 Simons (N. S.), 92 (republication 1851), it is said by Vice Chancellor Cranworth (l. c. 103): ''Where the interest of the children's legacies is given to a parent, to be applied for or towards their maintenance and education, there, in the absence of anything indicating a contrary intention, the parent takes the interest subject to no account, provided only that he discharges the duty imposed on him of maintaining and educating the children.'' Referring to the conditions of the gift or legacy, the Vice Chancellor (l. c. 104) uses language which is particularly appropriate to the case before us, saying: ''It is always extremely improbable that a testator can mean that the parent shall keep an accurate account of all money expended in the maintenance and education of a child, forming, as that child ordinarily does, part of the parent's establishment. The great probability always is that nothing more was intended than that the parent should adequately maintain and bring up the child.'' One of the authorities relied upon by the Vice Chancellor for this conclusion is Hadow v. Hadow, 9 Simons, *438. There one of the provisions in the will was that until certain stocks and funds should become payable to the sons of the testator, the dividends thereof should be paid over by his trustees into the hands of the testator's wife, ''to be by her applied, or, in case of her death, to be applied, by my said trustees or the survivors or survivor of them, for and towards the maintenance, education and advancement in life of my said sons or the survivor of them in such manner as she or they shall think proper.'' Vice Chancellor Shadwell, who rendered the opinion in the Hadow case, construing this, held (l. c. 442) that the testator meant that his widow and children should live together and that during her life she should have the income of the

children's property to maintain them without being liable to account, and it was accordingly ordered that the mother, the widow, was entitled to this income, she maintaining and educating her sons in the proper manner.

In Hora v. Hora, 33 Beavan, 88, the testator had given all of his real and personal estate to his wife and eldest son, upon trust, "to apply the rents, profits and income of the aforesaid properties to the maintenance, education and support of all his children by his present and former wife, until his youngest child attained the age of twenty-one years." The children asked for an accounting of the income and of the application thereof between certain years named. The Master of the Rolls held that it appearing that the children had been maintained, educated and suported, he could direct no accounting; that "if anyone is dissatisfied with the application of the income until the youngest child attained twenty-one, he ought to have made out some special case. There is no suggestion that the children have not been properly maintained and supported, and I cannot direct this account." So it was held in Carr v. Living, 28 Beavan, 644.

In Scott v. Key, 35 Beavan, 291, it is held that where the bequest was to the widow of two-thirds of the residue of the estate, to be at her sole and entire disposal for the maintenance of herself and such child or children as the testator may have by her, that the widow had an uncontrolled power over the income so long as the children were maintained and that the right of the children to maintenance did not cease at twenty-one years, provided they continued to live with their mother.

On the authority of these cases, we hold that the father's right to this fund is absolute and that he is not bound to render an accounting of his expenditures or expenses connected with the fund. We have no doubt whatever that the intention of the testator, to be

gathered from his will, was to provide a fund to aid the father, charged, if not burdened, with the support of a number of children, from the income of which he might be better able to perform that task; to aid him in the support and education of his children, as long as those children were dependent upon him for their support and education and remained of his household. He was under no obligation to account to them or to anyone, for his receipts or expenditures in this behalf, and is entitled to hold the fund, which out of a mistaken view, he turned into court, and which is now on deposit with the court.

We are confirmed in the view we take of this case by consideration of the will in its entirety. The clause we have quoted and considered above is the first clause in the will. Following that are devises to his son Archibald and his daughter Alby, of parcels of real estate. Then follows a devise to his two sons, Daniel and George, jointly, of a certain other lot of ground. The next clause directs his executors to appraise all of his personal property and permit his children to select such articles as they may desire for which each of them "shall be charged with the appraised value of the personal property selected by each," and that all other personal property not so selected shall be sold and the proceeds thereof divided into five equal parts, giving one part to each of his five children. The concluding clauses provide for the erection of a monument to his memory and the appointment of his son George and one Merry as executors.

We have no description in the record of the real estate left to the four children other than Alton, nor evidence of its value, but it is fair to assume that the testator aimed to make a fair and equal distribution of his estate among all of his five children. If the will is to be interpreted as giving his eldest son, Alton R., his namesake, the mere usufruct of the parcel of land devised, and that usufruct especially devoted to

the maintenance and education of his (Alton's) children, then this son was not on an equality with his sister and brothers and was very greatly discriminated against. Considering the will as a whole, we gather no such intention. As we construe this clause, the fee of the lot is in Alton R. Easton, subject only to the trust, not in the lot, but in its income; that he should use the income for the support and education of his children as long as they needed to be educated and as long as they have their domicile with him; continue members of his family.

It follows that the action of the circuit court in requiring an accounting by Alton R. Easton, the appellant here, in removing him as trustee, in appointing a new trustee in his stead, was without authority and is contrary to the spirit and intent of the will of Alton R. Easton, the testator.

Nor should the circuit court longer retain the custody of the fund either in the hands of its clerk or of the receiver appointed by it, but should direct that the fund and its accretions, if any, be turned over to the appellant, Alton R. Easton, to be by him held in conformity with the provisions of the will of his father.

The judgment of the circuit court is accordingly reversed and the cause remanded, with directions to that court to enter up a decree as herein provided and to dismiss the cause from further consideration in that court, taxing all the costs and expenses of the proceedings which have accrued upon and since the filing of the petition here by the respondents against the respondents. *Nortoni* and *Allen, JJ.,* concur.