Carolyn VIENHAGE, Public Administrator of Greene County, Personal Representative of the Estate of Calley Columbis a/k/a Calley Calliope, Deceased, Plaintiff-Respondent,

v.

John CARTER, Defendant-Appellant.

No. 13288.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 25, 1984.

Motion for Rehearing or Transfer Denied
Nov. 16, 1984.

Henry S. Clapper, Monroe, Clapper & Randall, Monett, for defendant-appellant.

Jay P. Cummings, Gannaway, Fiorella & Cummings, Springfield, for plaintiff-respondent.

MAUS, Presiding Judge.

This action was commenced by the guardian of Calley Columbis to set aside a deed executed by her ward. Her petition alleged the deed was executed when the ward was incompetent, as the result of undue influence and was without consideration. The petition was filed on December 10, 1979. Trial was inordinately delayed by the hospitalization or illness of the defendant at the time of each trial setting. Ultimately, his deposition was taken by the plaintiff and his testimony presented in that manner. On September 21, 1982, the trial court found the deed invalid for each of the reasons alleged and entered judgment as prayed. The same result was reached by a first amended judgment. The defendant appealed. The ward died after the appeal was submitted to this court. The Public Administrator of Greene County, as Personal Representative of the deceased ward's estate, has been substituted as plaintiff-respondent. The defendant presents three points on appeal.

The record presents only a sketchy outline of the background for the execution of the deed on June 6, 1979. The ward was 76 years old. She owned at least two tracts of residential property. One was on Lynn Street, the other on North Broadway. There was a house and a garage remodeled into what was called a little house on the Broadway tract. That tract is the subject of this case.

In approximately 1976, the defendant and his mother as tenants moved into the house on the Broadway tract. At a time not clear from the record, they apparently moved into the little house. By inference the ward moved to the Broadway property. The defendant in 1976 was approximately

46 years old. Until he was injured in an automobile accident he was a self-employed, independent insurance adjuster, or "facilitator." He and his mother became acquainted with the ward. They went places together. They all participated in and attended conferences of the Gospel Peace Church. This was a non-denominational church headed by Rev. Woodrow Morris. Headquarters was in Hopkinsville, Kentucky. The three associated with and visited other members of that church. At an undisclosed time, the defendant's mother sued the ward for personal injuries alleged to have resulted from a fall on the Broadway tract. The defendant testified the ward wanted to give him the Broadway tract because of the assistance he had rendered to her. The record discloses little concerning the execution of the deed in question. It was executed in the office of an attorney. The defendant and his mother were there. The defendant did not know how the ward got there.

As stated, the deed under attack was executed on June 6, 1979. On August 14, 1979, the ward executed a second warranty deed in form conveying the tract to her attorney as "trustee, pursuant to Trust Agreement executed of even date with this Deed." On August 24, 1979, the defendant executed a warranty deed in form conveying the property to Richard L. Worsham of Christian County, Kentucky. Worsham was the nephew of the Rev. Morris of the Gospel Peace Church. Thereafter, Worsham and his wife were added as defendants. Later they reconveyed to the defendant and were dismissed.

■ The defendant first asserts error because Jay P. Cummings, as trustee under the deed of August 14, 1979, is not a party plaintiff. In making this point the defendant cites Rule 52.04 and *Neal v. Drennan*, 640 S.W.2d 132 (Mo.App.1982) and states the trustee was an indispensable party. The defendant first raised this point on appeal. "A finding of fatal non-joinder only serves to supply defendant with an ill-deserved bounty for his lying-in-wait and does not comport with the purpose of Rule

52.04 to prevent repeated litigation on the same issues." *Skidmore v. Back*, 512 S.W.2d 223, 234 (Mo.App.1974).

Further, the appellant has not addressed the issue of whether the trustee is an indispensable party as distinguished from a necessary party.

Under the modern approach, therefore, it must first be determined under Rule 52.04(a) whether the absent person is to be joined and, after it is determined that he should be so joined, then the particular case must be examined in the light of the factors in subdivision (b) to determine whether the action may proceed in the absence of the nonjoined party or is to be dismissed.

*State ex rel. Emasco Ins. Co. v. Rush*, 546 S.W.2d 188, 196 (Mo.App.1977). Also see *Kingsley v. Burack*, 536 S.W.2d 7 (Mo. banc 1976); *Morgan v. Wartenbee*, 569 S.W.2d 391 (Mo.App.1978). However, it is not necessary to further consider this aspect or the issue of waiver. Compare *Skidmore v. Back*, supra; Rule 55.27(g); *Massey v. Long*, 608 S.W.2d 547 (Mo.App. 1980).

■ The deed of August 14, 1979, imposed no duties upon the trustee. The actual existence of a trust agreement was not established. From all that appears from the record it was a dry trust. *Cornwell v. Orton*, 126 Mo. 355, 27 S.W. 536 (1894). Any title conveyed redounded to the grantor. § 456.020, RSMo 1978; *Blumenthal v. Blumenthal*, 251 Mo. 693, 158 S.W. 648 (1913); *Carter v. Long*, 181 Mo. 701, 81 S.W. 162 (1904). Compare § 456.-020, RSMo Supp.1983; *Penney v. White*, 594 S.W.2d 632 (Mo.App.1980). "Where a trust is dry and executed by the statute of uses so that a legal title as well as equitable ownership is in the beneficiary, the beneficiary and not the trustee is the proper party plaintiff in a suit to enforce a cause of action pertaining thereto." 76 Am.Jur.2d Trusts § 607 (1975). The appellant's first point is denied.

■ The appellant next asserts that the trial court erred in permitting two lay wit-

nesses to express opinions that the ward was incompetent. The rule is well established in this state:

> [A] lay ·witness is not competent to testify that, in the opinion of such witness, a person is of unsound mind or insane, without first relating the facts upon which such opinion is based; and, when the facts have been stated by such lay witness, unless such facts are inconsistent with such person's sanity, the opinion of such lay witness that the person under consideration was insane or of unsound mind, is not admissible in evidence and may not be received.

*Lee v. Ullery,* 346 Mo. 236, 244, 140 S.W.2d 5, 9 (1940).

■ Appellant contends that the lay witnesses in this case did not first state facts inconsistent with competency sufficient to establish a basis for their opinions. The first witness was the guardian, Joanna Butterworth. She testified she had known the ward for 11½ years. They corresponded by mail regularly while Mrs. Butterworth lived in England and New Jersey. In March, April and May, 1979, the ward called Mrs. Butterworth several times each day. They also visited in person on numerous occasions. From June to September, 1979, the ward resided in Mrs. Butterworth's home. Mrs. Butterworth testified to specific incidences of behavior which were "abnormal, unusual and incoherent." The ward constantly misplaced her own belongings. Once she was unable to find her false teeth. After two days of searching, they were found under the grapes in the refrigerator. She was unable to find her way around the house. She would wake up in the middle of the night to go to the restroom and would require assistance in finding her way back to her bedroom. The ward was unable to communicate properly about business affairs of any kind. She once was unable to subtract $2.00 from an amount she had. She called the bank to check on balances of accounts which had been closed, but she could not remember closing them. At times she was incoherent. On occasion she spoke to the dead.

The second witness was Don Busch, an attorney and city manager of Springfield. He testified that through her complaints to his office he had known the ward for a number of years. From sometime in 1978 through July of 1979, the ward was badly confused. He repeatedly discussed with her the appellant's mother's tort claim. Even though she had liability insurance, he could not convince her the appellant would not take her property. She said she was eating weeds from her garden. Each of these witnesses was qualified to express an opinion that during the period in question, the ward was incompetent. *Thompson v. Curators of University of Missouri,* 488 S.W.2d 617 (Mo.1973); *Barnes v. Marshall,* 467 S.W.2d 70 (Mo.1971). The appellant's second point is denied.

■ The appellant's next point is that there was no substantial evidence to support the determination the ward was incompetent. This contention is sufficiently refuted by the evidence related by and the opinions of witnesses Butterworth and Busch. Further, there was much additional evidence of incompetency. In 1979 she talked at least 50 times to a volunteer social worker. She expressed a constant fear the appellant would get her property. She reported he had proposed marriage to her. Both orally and in writing she expressed her inability to remember where she had been on trips with appellant. She was confused and couldn't remember what she had done. She repeatedly expressed a fear "she was going out of her mind." In September, 1979, she was examined by a clinical psychologist. He found she was suffering from nonpsychotic organic brain syndrome, senility. He described this as a slow, progressive condition.

■ In addition to this affirmative evidence, the trial court could consider the conduct of the defendant. The trial court could have found his conveyance to Wors-

ham voluntary and an admission of the validity of the guardian's claim. *Amsinger v. Najim,* 335 Mo. 528, 73 S.W.2d 214 (1934).

To support his contention the defendant cites opinions of competency by a chiropractor and Rev. Morris and another member of the Gospel Peace Church. The latter reported the ward had expressed a desire to give the property to the defendant and later expressed satisfaction at having done so. This court must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Rule 73.01; *Cozean v. Heisler,* 612 S.W.2d 817 (Mo.App.1981). The trial court rejected this testimony and it was within its province to do so. *Labor Discount Center, Inc. v. State Bank and Trust Co. of Wellston,* 526 S.W.2d 407 (Mo.App.1975).

Also to support his contention, the defendant seizes upon a bit of testimony of the psychologist that in September there was no way he could tell how the ward behaved the day previously. Therefore, the appellant argues, there is no evidence of incompetency on June 6, 1979. It was not necessary to show by an eye witness, incompetency at the moment of the execution of the deed. Evidence of the ward's mental condition before and after the execution is sufficient if it provides a reasonable inference of incompetency at the time of execution. *Thompson v. Curators of University of Missouri,* supra. The evidence in this case provided such an inference. *Foster v. Henderson,* 538 S.W.2d 910 (Mo.App.1976).

The determination of the trial court that the ward did not have sufficient capacity to execute the deed of June 6, 1979, is supported by the evidence. It is therefore not necessary to consider the appellant's contentions concerning undue influence and failure of consideration. The judgment is affirmed.

HOGAN and PREWITT, JJ., concur.